### TELEGRAM NEWSPAPER COMPANY *vs.* COMMONWEALTH.
### GAZETTE COMPANY *vs.* SAME.

Worcester.    October 7, 1898. — January 4, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Corporation — Criminal Contempt — Proceedings for Contempt on Court's own Motion — Publications in Newspaper — Imposition of Fine on Corporation — Execution.*

A corporation may be held liable for a criminal contempt in publishing an article in a newspaper which is printed and circulated in the place where a trial is had pending the trial, and which concerns the cause on trial, and is calculated to prejudice the jury in the cause and prevent a fair trial.

When it comes in any manner to the knowledge of the presiding justice of a court that articles are published in a newspaper circulated in the place where the

court is held which are calculated to prevent a fair trial of a cause then on trial before the court, the court of its own motion can institute proceedings for contempt.

It may be rightly adjudged a contempt of court for a newspaper to publish statements of facts, evidence of which was not competent at the trial of a cause and was not introduced at the trial thereof, if they were so made that it was likely that the presiding justice and the jurors would read them during the trial, and their natural and probable effect was improperly to influence the court and jury in the determination of the cause.

The proper method of collecting a fine imposed upon a corporation for contempt is by levy of an execution, to be issued by the court.

FIELD, C. J.   These are two writs of error, and, although the pleadings may possibly raise issues of fact as well as issues of law, the cases were entered without objection on the part of any of the parties upon the docket of the full court, and each case was heard upon the plea *in nullo est erratum.*   The Telegram Newspaper Company is a Massachusetts corporation, having its usual place of business in Worcester and publishing there a daily newspaper.   The Gazette Company is a corporation established under the laws of the State of Maine, having its usual place of business in Worcester, and publishing there a daily newspaper.   It is understood that it had complied with St. 1884, c. 330, and had made the commissioner of corporations its attorney, upon whom legal process might be served.   The record in the cases recites that the corporations respectively appeared in the Superior Court, with counsel, in obedience to the summons of that court to show cause why they should not be adjudged in contempt for publishing certain articles in their newspapers of the dates of January 13 and 14 respectively of the year 1898, which articles dealt with and discussed the matter of the trial before said court of the action or petition of Silas H. Loring against the town of Holden, and that the corporations appeared and were heard, so that any question of due service of the summons upon the foreign corporation has become immaterial.

At the time of the publication of the articles in the newspapers, the petition of Silas H. Loring against the town of Holden was on trial before the Superior Court sitting at Worcester, and it was for the assessment of damages suffered by the taking of land of the petitioner for the abolition of a grade crossing of the Fitchburg Railroad Company.   The portion of the articles

published which the court found was calculated to obstruct the course of justice in said court and prevent a fair trial of said petition was, after describing the petition of Loring against the town of Holden, the following : " The town offered Loring $80 at the time of the taking, but he demanded $250, and, not getting it, went to law," which appeared in the Worcester Daily Telegram ; and " The town offered the plaintiff $80, but he wanted $250," which appeared in the Worcester Evening Gazette. Whether there is any truth in these statements does not appear. The facts stated, even if they were true, were not admissible in evidence at the trial of the petition before the Superior Court, and so far as appears they were no part of the proceedings at the trial, and, if they were brought to the knowledge of the jurors before they rendered their verdict, were calculated to influence them upon the amount of the damages to be given by their verdict.   The newspapers were published and circulated in Worcester, and it was not improbable at the time of publication that the articles would be read by some of the jurors before the trial of the petition was finished.

The record before us, in each case, after setting out the whole of the articles published, and the summons, service, and appearance of the corporation and the hearing, concludes as follows : " When, after hearing all matters and things concerning said publication by said respondents, it appearing to said court that said article was calculated to obstruct the course of justice in said court and prevent a fair trial of said case, and that it was a contempt of said court for said corporation to publish the said article during the said trial, it was therefore ordered by said court that said respondent corporation be adjudged guilty of contempt of said court for said publication of said article, and it was thereupon ordered by said court that said respondent corporation pay a fine of $100, and it was further ordered that, if said fine be not paid within twenty-four hours, an execution be issued against said respondent corporation for the collection of said fine by a levy on its property."

It is contended that a corporation cannot be guilty of a criminal contempt of court although it may be fined for what is called a civil contempt.   It is said that an intent cannot be imputed to a corporation in criminal proceedings.   It has been decided in

this Commonwealth that a corporation may be liable civilly for a libel or a malicious prosecution. *Fogg* v. *Boston & Lowell Railroad*, 148 Mass. 513. *Reed* v. *Home Savings Bank*, 130 Mass. 443. We think that a corporation may be liable criminally for certain offences of which a specific intent may be a necessary element. There is no more difficulty in imputing to a corporation a specific intent in criminal proceedings than in civil. A corporation cannot be arrested and imprisoned in eithe civil or criminal proceedings, but its property may be taken either as compensation for a private wrong or as punishment for a public wrong. In most of the States of this country corporations may be formed under general laws for the purpose of doing almost any kind of business as easily as partnerships, and many of the newspapers are published by corporations. Although natural persons who publish or assist in publishing a libel in a newspaper owned by a corporation may be punished criminally by fine or imprisonment, or both, yet if the corporation cannot be punished by a fine it will escape all criminal liability. The authors of libels are often irresponsible persons, and the remedy by private action against corporations for the publishing of libellous statements is often inadequate. That a corporation may be indicted for a misfeasance as well as for a nonfeasance has been decided in this Commonwealth. *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 339. See *The Queen* v. *Great North of England Railway*, 9 Q. B. 315, 326. A corporation may be indicted for a libel. *State* v. *Atchison*, 3 Lea, 729; *S. C.* 31 Am. Rep. 663, and note. *Brennan* v. *Tracy*, 2 Mo. App. 540. *Pharmaceutical Society* v. *London & Provincial Supply Association*, 5 App. Cas. 857, 869, 870. 2 Bish. New Crim. Law, § 935. Newell, Slander & Libel, (2d ed.) 362, 363. Odgers, Libel & Slander, (3d ed.) 436. Thompson, Corp. §§ 6418 *et seq.*

The publication of an article in a newspaper which is printed and circulated in the place where a trial is had pending the trial, and which concerns the cause on trial and is calculated to prejudice the jury in the cause and prevent a fair trial, often has been held to be a criminal contempt of the court trying the cause. *O'Shea* v. *O'Shea*, 15 P. D. 59. *Ex parte Green*, 7 Times Law Rep. 411. *Daw* v. *Eley*, L. R. 7 Eq. 49, 55. *Rams-*

*botham* v. *Senior*, L. R. 8 Eq. 575. *People* v. *Wilson*, 64 Ill.
195. *In re Sturoc*, 48 N. H. 428. *In re Cheeseman*, 10 Vroom,
115, 137. *State* v. *Frew*, 24 W. Va. 416. Oswald, Contempt of
Court, (2d ed.) 58 *et seq.* 7 Am. & Eng. Encyc. of Law, (2d ed.)
59. If a corporation publishes the article, we see no reason why
it should not be held liable for a criminal contempt. Thomp-
son, Corp. §§ 6448 *et seq.* 7 Am. & Eng. Encyc. of Law, (2d ed.)
847, and cases cited.

There are no statutes in this Commonwealth regulating the
proceedings in the trial and punishment of contempt of court.
" The summary power to commit and punish for contempts
tending to obstruct or degrade the administration of justice is
inherent in Courts of Chancery and other Superior Courts, as
essential to the execution of their powers and to the maintenance
of their authority, and is part of the law of the land, within the
meaning of Magna Charta and of the Twelfth Article of our
Declaration of Rights." *Cartwright's case*, 114 Mass. 230, 238.
See *Tinsley* v. *Anderson*, 171 U. S. 101.

In the present cases it was not necessary that a formal com-
plaint should first have been made to the court. The contempt,
if there was one, was not, strictly speaking, committed in the
presence of the court, but it related to a trial then proceeding
before the court. In each case a summons to the plaintiffs in
error was issued by the court, of its own motion and without
complaint made, to show cause why the corporations should not
be adjudged in contempt for publishing an article dealing with a
matter on trial before the court. When it comes in any manner
to the knowledge of the presiding justice of a court that articles
are published in a newspaper circulated in the place where the
court is held which are calculated to prevent a fair trial of a
cause then on trial before the court, the court of its own motion
can institute proceedings for contempt. Such a power in the
court is necessary for its own protection against an improper
interference with the due administration of justice, and it is not
dependent upon the complaint of any of the parties litigant. If
the publication amounts to a contempt of court, because it inter-
feres with the due administration of justice in a cause before
the court, the contempt is analogous to a contempt committed
in the presence of the court. The proceedings in the present

cases after the service of process show that the plaintiffs in error were specifically informed of the nature of the charge against them, and were given a full opportunity to be heard with the aid of counsel.

The most important question is whether the publication of these articles under the circumstances stated could be adjudged a contempt. The articles published were not defamatory, either as regards the presiding justice of the court or the jurors before whom the cause referred to was being tried, or the parties to the cause. In one case the court discharged the treasurer and manager of the newspaper, and in the other the editor and the publisher, on the ground that they were not shown to be directly responsible for the publications. It is probable, although this does not expressly appear in the papers before us, that the person or persons employed to report for each newspaper the proceedings of the court wrote the articles and caused them to be published. The Superior Court has not found that there was an intent to influence the trial of the cause referred to on the part of anybody. The articles are objectionable only because they purport to state the amount of money which the town offered to pay the plaintiff, and the amount the plaintiff demanded before the petition was brought. The law encourages attempts to settle or compromise disputes without subjecting the parties to any liability, if the attempts fail, of having any concessions therein made to avoid litigation put in evidence against them in the subsequent litigation. *Upton* v. *South Reading Branch Railroad*, 8 Cush. 600. *Harrington* v. *Lincoln*, 4 Gray, 563. *Gay* v. *Bates*, 99 Mass. 263. *Draper* v. *Hatfield*, 124 Mass. 53. We are content to assume that the person or persons who wrote and caused the articles to be published did not know this rule of law, and acted without any intent to pervert the course of justice. As the only intent which can be imputed to the corporations is the intent of its officers or agents, the question is whether the publication of these articles without any intent to pervert the course of justice can be adjudged a contempt. In *Metropolitan Music Hall Co.* v. *Lake*, 58 L. J. (N. S.) Ch. 513, it is said that it must be shown that the articles were published with knowledge of the pending cause, and that appears in the present cases.

In *Cartwright's case, ubi supra*, it is said by the court: " But the jurisdiction and power of the court do not depend upon the question whether the offence might or might not be punished by indictment. . . . ' As regards the question whether a contempt has or has not been committed, it does not depend upon the intention of the party, but upon the act he has done.' By Taney, C. J., in *Wartman* v. *Wartman*, Taney, 362, 370." If a person talk with or send a statement to a juror about a cause, during the trial of it, in such a manner that it may cause prejudice or bias in the cause, although the intent with which the person acted may affect the amount of his punishment, he cannot justify his conduct by showing that he had no evil intent, and knew no better.

It was not necessary that the Superior Court should find that the articles published actually had been read by some of the jurors while trying the cause to which the articles referred. They plainly had been read by the presiding justice during the trial, and it was likely that they had been read by some of the jurors. The intention of the publisher of a newspaper is that it should be bought and read by persons within the place where it circulates. Cases before a court should be determined on evidence presented in court. It is an inevitable perversion of the proper administration of justice to attempt to influence the judge or jury in the determination of a cause pending before them by statements outside of the court room, and not in the presence of the parties, which may be false, and even if they are true are in law not admissible as evidence.

We cannot say that it appears that the Superior Court erred in adjudging that the publication of these articles, under the circumstances stated, was a contempt of that court, and it was for that court to determine whether it was necessary to institute proceedings for contempt in order to vindicate its authority to secure the due administration of justice in a cause pending before it. The publications contained statements of facts, evidence of which was not competent at the trial and was not introduced at the trial, and they were so made that it was likely that the presiding justice and the jurors would read them during the trial, and the natural and probable effect of them would be improperly to influence the justice and the jury in the determination of the cause.

The proper method of collecting a fine imposed upon a corporation is by a levy of an execution issued by the court. *The King* v. *Woolf*, 2 B. & Ald. 609; *S. C.* 1 Chitty, 583. *Huddleson* v. *Ruffin*, 6 Ohio St. 604. 1 Chitty, Crim. Law, (2d ed.) 811. 1 Bish. New Crim. Proc. §§ 1303 *et seq.*

*Judgments affirmed.*

*F. P. Goulding*, (*W. C. Mellish* with him,) for the plaintiffs in error.

*H. Parker*, District Attorney, (*G. S. Taft*, Assistant District Attorney with him,) for the Commonwealth.