Dirlam, J.
In the matter of an .application for a citation against The News to show cause why it should not be attached for contempt of .court, the court has been furnished with a world of authorities, and they go very far to illustrate how great minds differ on the same subject.
To reach the real question here, it becomes important that we distinguish the several classes of contempt that are recognized at common law and by the statute. In the first place we have that class that grows out of the right of a court to protect its own orders, and to protect its officers in the enforcement of these orders. It will be seen in a moment that decisions on that class of cases are entirely inapplicable to the case at bar.
Next we h.av.e a class of cases that are distinct from the rest; they are cases where disrespect is shown to a court while court is in session and in the performance of its duty. On that class of cases there seems to be no question in any of the authorities but *573 that the court has a right to summarily punish a party who is guilty of disrespect in its presence, .or who is guilty of conduct in the vicinity of the sitting of the court such‘as to obstruct its business. It will be remembered that these are direct .assaults upon the court. There is no conflict in the authorities that I have found as to the right of a court to .administer summary justice without process or without a hearing in a case of that kind where the court is openly insulted by improper language or improper conduct -is indulged in in its presence. A glance will show that this is not of that class.
There is ,a third class of cases, and that is one in which the party absents himself from the actual .presence of the court or ■its actual vicinity, and assails it, as it might be said, .at long distance, -through a publication, through a caricature, through a letter, through the telephone, through the telegraph. That class of cases is called by some of' these .authorities constructive contempt, .and there does not seem to be any question among the authorities, or at least the best of them, but that they may be punished; because, by construction, the party writing or publishing the article is assumed -to come into the presence,, of the court with the article, or with the caricature, with the letter,' or with the hand bill; but in a moment it will be seen that this case is not of the class that is before the coui’t, because in that class of cases there is a disrespect shown to the court in the writing of the letter, or the caricature, or what not.
There -is another class of contempt eases that is recognized, and that where a person outside of the record busies himself by interfering with a suit that is in progress, by attacking one or both of the parties in such a manner that the party can not have redress in the -trial of the .ease because he confines himself to that which is incompetent to bring before the court therein. There is a good deal of conflict .as to the power of a court -in that class of cases, where the court is not assailed. The leading case, as I regard it, in that class is Telegram Newspaper Co. v. Commonwealth, 172 Mass., 294. It is .a very elaborate ease and is full of citation of authorities, and its reasoning is strong and it is an ably decided ease. In that case two parties were in litigation and the cause was on actual trial. A party that had no interest *574 in the .ease, a party that was a mere intermeddler, took it upon itself to decide the case ont of court, to assume the jurisdiction of the court .and to try the question of the right and the wrong as between the parties, by a newspaper court. It was held that that was misconduct which could be disciplined by the court, on the ground only that the matter published with regard to the litigants could not be taken cognizance of in the trial, and unless the court could protect itself from such conduct by a contempt proceeding, then the party would be remediless.
There is another class of cases .that grows up between parties in litigation, where the parties are in court, and as to Conduct by publications and matters outside of the presence of the court with regard to each other; and there is a great deal of conflict as to that class of eases, as to whether the court has .any jurisdiction in contempt. It is argued on one side that a eontmept proceeding is an extraordinary proceeding; that it is not adjudged in accordance with the general rules of common law; juries are not permitted; the trial .is not one even such as is authorized .and had .in equity cases; but there is a line of cases, and I think the better line, «that a court has a right to protect its suitors, .at least in the actual progress of the trial, from conduct of that kind.
There is another class of eases that seems to -be difficult to classify, and' that is, where one of the parties is charged with misconduct as to the other party, not in the actual trial, where the court has a right to discipline as to .conduct in the trial, but out of the court, and classed with the constructive contempts. This case at bar, I -think, falls within this class. It is a publication, not while the actual trial was going, on, not while the court and parties were engaged in the trial, but it is a publication o£ one party to. a suit that is expected soon to be tried, claimed to be an attack on the other party, and of such a character as will deprive him of a fair trial before the court.
It may be said that our Supreme Court has probably gone as far as any court, in Myers v. State, 46 Ohio St., 473, in protecting itself from improper conduct, but we must distinguish as between an attack upon the party and a disrespect of the ■court.
*575 People v. Wilson, 64 Ill., 195, is a very elaborate case and cites many .authorities. In a recent Colorado report there is a case which follows to a .certain extent People v. Wilson and Myers v. State, supra. These are the only cases that I deem of importance as applicable to the rule in Ohio.
Nearly five years ago a suit was pending in this court in which it was sought through the medium of a tax inquisitor to collect a large .amount of money from the Harter estate; that case was claimed -to be settled. A proceeding by the state authorities was inaugurated, whereby an investigation grew up as to the conduct of that case and its settlement and adjustment. Connected with this, the ease that was to be tried was commenced, and it has three causes of action. The first sets out by publication in The Nexus on July 17, 1901, the last on July 20. In that publication the word “grafter” is used. It is a word that I have been unable, with my limited knowledge of the English language,, to find a definition for. I do not find any definition of that word in the legal dictionaries. I am impressed that it is a term borrowed from what is known as the thieves’ dialect — a secret term in which they converse with .each other without being understood by outside parties — but that word has acquired, from .the writings of certain parties, a popular meaning, and it is understood at least to be something not exactly reputable. It is not necessary -to define it any further.
In connection with this investigation of .the Harter case The Nexus is charged with libel, first, for this somewhat picturesque publication: •
“Old Captain Kidd, Dick Turpin, Duval and others of the olden time pirates and highwaymen were thoroughly up .to date in their line, but methods have changed greatly since their day. The modern tax grafter [meaning plaintiff] gets his money without danger of being shot.”
And the following;
“The tax grafter [meaning the plaintiff] is .an outrage, and everybody knows it. There is but one term applicable tp such schemes and that is blackmailing.”
And, third:
*576 “From the .above [something that is not published here] it is admitted that .all the said $35,000 was not paid into the county treasury. ‘We herewith hand you $18,421, being the net receipts received from the proceeds of said litigation.’ Thus over their own signatures is the larceny of the tax-payers’ money of the county admitted by Brucker, Mengert and Douglass.
“The action of the State Auditor in appointing experts to examine the books in the auditor’s and treasurer’s office is understood to b.e upon the opinion of the Attorney General after seeing these published statements of Brucker, Mengert [meaning plaintiff] and Douglass, together with the previous newspaper statements concerning this unparalleled larceny of the public money. ’ ’
This case slept for four and a half years, and this judge, feeling that it would be an indelicate thing for him to sit in it as these matters were largely discussed in polities during the time of the judicial campaign between himself and Mr. Mengert, promptly notified the parties that the court, with this member presiding, would not try that ease, and advised procuring another judge. It lingered along until the calling of the docket at this term, and the court recognizing the fact that the case was four years old, notified the parties in open court that unless they did take action to procure a judge competent to try the ease during the term,, he would .assume to drop the case from the docket at the close of the term. Thereupon the presiding judge of the district designated a judge to dispose of the cises that neither Judge Campbell nor myself would like to sit in. That resulted in -a hitch, and finally both the parties came to the present presiding judge, and asked him to try the case for the purpose of getting rid of it, and the judge, I think without due consideration, consented. This was either upon Thursday or Friday. The court thereupon proceeded to get ready for the trial, and for the purpose of not being compelled to select jurors in the case, ordered twenty-one jurors to be drawn from the box, and fixed Monday, February 27, for the trial.
On Saturday, the twenty-fifth, a report of an examination of the offices of Richland county came out. In that report was a criticism of a like transaction in some respects by the same parties and others. The News published that as an item of news coming *577 to it through the Associated Press dispatches; that is not complained of. On the same day, in the evening Neivs was published the matter complained of. It does- not in .any way allude to the court; it does not allude to the parties unless by innuendo; it does rehash what we have heard for five years on the subject of tax grafting, and it urges that the .people have wakened up on the question, and that public opinion is after .the tax grafter. That is the purport; I need not read the article. No names are mentioned, but it does -mention the tax grafters of Richland county. In another column is copied an article from the Canton News, attacking a transaction in Columbus out of which grows a couple of libel suits, and condemning the methods of what is called the tax grafter, and reciting that in the case in Columbus 39 per cent, of the taxes that were collected failed to reach the treasurer’s office. Then, following that is a commendation by The News saying, “Right you are,” then reciting the fact that out of the $35,000 realized in a $400,000 case in Mansfield, in .svibstance only $8,000 reached the county treasurer’s office; then the comment that the tax grafters down in Franklin were only kindergartners as compared with tax grafting in Rich-land county. This and the editorial are the matters for which the court is asked to cite The News.
There is a long line of cases that hold that where as between the parties that attack each other the remedy should be administered in the suit, and especially suits in which exemplary damages may be assessed, the conduct of the parties before and after the commencement of a suit is of the essence of the suit and is a matter to be taken into consideration in the trial. It is a matter competent to be gone into by- testimony; it is a matter competent -to be noticed by the charge of the court in the case; it is a matter, if the conduct is improper, that will go to enhance the damages in that suit, and a full' remedy as betwwen the parties can be administered in the trial of that ease. If the publication was unjustifiable, the .plaintiff in that case has a right to prove it as a part of his case; he has a right to submit it to the jury instead of to the court; he has a right to appeal to the jury for exemplary damages in that very matter.
*578 It was not because of this publication that this court continued the ease; it was because of another publication of a party outside of the case, of a party that could not foe reached in the case; of a party whose conduct could not be introduced in evidence in the case; a party that .attacks the Richland county tax grafters, as they are called, viciously, and to use the slang phrase goes The News one better. It starts out with headlines, and- was published in a Sunday paper of February 26, that is read by almost everybody in this town; it starts out with regard to -the fact that, “An office in Richland county is better than a Klondyke gold mine,” and then goes .through, in the usual sensational style. But it was not that paper alone; the Pittsburg papers took up the cry; the Cleveland papers joined in; even the Chicago papers took a hand, as well as all the surrounding papers. The court in fairness did not believe that the case ought to be tried with all these outside parties mixing in it, because the parties assailed were entirely helpless to protect themselves in the suit. They could not introduce these .attacks; the parties had no power to protect themselves, and I do not think that the circumstances were such that credit would accrue to the judiciary in entering upon a .trial under such circumstances, and therefore the court took the responsibility of continuing the case.
Suppose the'court should cite a party here for contempt; it would give the other party an, advantage in the case, and we would drop right into, the difficulty that the court attempted to avoid by continuing this ease; right into the difficulty that the court sought to get rid .of; and would prevent this case being tried when the public mind was not unduly exercised, and when it could be deliberately and carefully tried, and tried in -such a manner as to call forth the respect of all parties outside of court and to create faith in the endeavor to keep the court pure and unsmutched. If this court should issue this citation and go into this investigation, it would give .the other party an advantage, and if there was an investigation necessary, the opinion of the court is, that it should be postponed until -this case is finally tried and disposed of, a.nd should not be brought out so that it may be *579 banded .and used for the advantage of one party or the other. The court thinks that the citation ought not to be issued.
A. A. Douglass, for plaintiff.
Kerr & LaDow and Cummings, McBride & Wolfe, contra.