STATE, Respondent, v. MOODY, Appellant.

(196 N. W. 500.)

(File No. 5192. Opinion filed December 21, 1923.)

**Contempt—False Affidavit for Continuance Direct Contempt Punishable Summarily.**

The knowingly making and presentation in open court of a false affidavit for a continuance, on the ground that defendant's wife was about to be confined, and had no one with her but two small children, and that it was absolutely necessary that defendant remain with his wife until after her confinement, was a direct rather than constructive contempt, which could be punished summarily, without the filing of an affidavit or complaint, on a warrant for defendant's arrest, which clearly stated the charge; defendant being given full opportunity for explanation.

Appeal from Circuit Court, Sanborn County; HON. FRANK B. SMITH, Judge.

Walter Moody was convicted of contempt, and he appeals. Affirmed.

*T. J. Spangler,* of Mitchell, for Appellant.

*Byron S. Payne,* Attorney General, and *R. B. Palmer,* of Woonsocket, (*Clarence C. Caldwell* and *Roy D. Burns,* both of Sioux Falls, of Counsel), for Respondent.

Appellant cited: State v. Sweetland, 3 S. D. 503; Freeman v. City of Huron, 66 N. W. (S. D.) 928; Rev. Code 1919, Sec. 3793; Hoffman v. Hoffman, 26 S. D. 34, 127 N. W. 478; Kruger v. Kruger, 32 S. D. 470, 143 N. W. 368; State v. Edwards, 15 S. D. 385, 89 N. W. 1011; Thomas v. People, 23 Pac. 326; Ludden v. State, 48 N. W. 61; Gandy v. State, 14 N. W. 143.

Respondent cited: Hughes v. Terr., 10 Ariz. 119, 85 Pac. 1058; State v. Frew (W. Va.), 49 Am. Rep. 257; Reg. v. How-

land, 14 Ont. A. 184; Greeley v. Court, 27 How. Prac. (N. Y.) 14; Dollard v. Koronsky, 113 N. Y. S. 793.

SHERWOOD, J.   On November 2, 1921, Walter Moody was arraigned in the circuit court of Sanborn county, charged with the crime of unlawfully manufacturing intoxicating liquor. He pleaded not guilty.

On November 23, while said court was in regular session, and his case for trial, defendant made, swore to, presented, and filed, in the court, his affidavit for continuance, in which he stated that his wife was then pregnant, and expected to be delivered of a child within the next few days. That there was no one at the home of said Walter Moody to care for his wife except two small children; that he had no money or means with which to hire any help for his wife; and that, if she should be confined during his absence from home, there would be no one present who could even summon a doctor to care for her; that it was absolutely necessary that defendant remain at home with his wife until after her confinement; that it was impossible for him to remain at Woonsocket and away from his family longer to attend the term of court then being held.

Believing in, and relying upon this affidavit, the court granted defendant a continuance until the next term of court. On May 20, 1922, being a day of the next regular term of said court, defendant was tried, and a verdict of not guilty returned.

At the trial, which occurred before the same judge who granted the continuance, it appeared by testimony produced in open court and received on such trial, that defendant's wife was not confined until January 5, 1922. That defendant secured a continuance of his case on an affidavit made in November that he expected his wife to be confined in a few days and would have to be with her all the time. On this testimony, all given before the same presiding judge in open court on May 23, 1922, the court, Hon. Frank B. Smith, presiding judge, issued a warrant or order of arrest for defendant for contempt of court. The warrant set up the facts appearing of record, the substance of the affidavit for continuance, and that "the court, being now informed that said statements in said affidavit were substantially and materially false and untrue, and that such falsity and untruthfulness

of the same was fully known to the said Walter Moody, at the time of filing said affidavit, and was made for the purpose of deceiving and misleading the court, and in contempt thereof," ordered defendant arrested and brought before the court to answer to the charge of contempt of court. No complaint or affidavit was filed. The warrant was issued by the court on its own motion.

Defendant appeared by counsel, and moved to quash the writ on the following grounds; (1) Want of jurisdiction to summarily try defendant; (2) failure to file complaint or affidavit before writ issued; (3) because not within the purview of R. C. 1919, § 3793; (4) because defendant has not been sufficiently advised of the charges made against him, as provided by section 7, art. 6 Constitution; (5) that the facts stated do not show any contempt was committed; (6) because nothing is before the court on which an issue can be joined.

Plaintiff then offered a partial transcript of the testimony given by Walter Moody at his trial on May 20th, certified by the official stenographer, in which Moody testified that the baby was born January 5th, and that he made the affidavit for continuance. Defendant's objection to this transcript as incompetent, irrelevant, and immaterial, and as failing in any way to show defendant was in contempt of court was properly overruled. The court then stated to the record that it knows of its own knowledge that on November 23, 1921, when the affidavit for continuance was filed by Moody in his case, an oral application was made for a continuance, and that, relying on such affidavit, the court made an oral order continuing defendant's case, and the motion for continuance was noted in the court calendar.

Dr. Loring was then sworn for plaintiff, and testified that he was a physician and surgeon at Artesian for almost 30 years; that he knew Walter Moody on the 23d of November; that there was no relationship of physician and patient between himself and Moody or any member of Moody's family at that time; that in the latter part of December or first of January, Moody engaged witness for an obstetrical case for his wife, but did not call the witness to attend her.

Defendant then offered the testimony of several witnesses. It clearly appeared from the evidence of Mrs. Moody that on No-

vember 23, 1921, she had a daughter 9 years old, a son 7 years old, and a daughter 3 years old at home with her; that no physician had attended her at the birth of the two children preceding the last; and that no doctor attended her when her last child was born. That she had no special trouble when any of the children were born. . That a neighbor, Mrs. Campbell, lived just across the road from the Moody home on November 23, 1921, and when her baby was born. About the last of December or first of January, Mrs. Moody asked this neighbor to attend her during her sickness, and that the morning the child was born Mrs. Campbell was called, and was present with her. That at the time the child was actually born no effort was made to get a physician, and Mrs. Moody testified that "we thought we didn't need one." It further appeared that Mrs. Moody's mother, a woman in good health and 52 years old, lived only two miles from the Moody home, and she was not called at the birth of the child.

At the close of the testimony, the court found defendant guilty of contempt, and fined him $200, and to be committed until the fine was paid not exceeding 100 days. He has appealed to this court. It is very clear from this record that the affidavit made by Moody for a continuance was false; and was known by him to be false at the time it was made. · It is also clear that the affidavit, which was sworn to before the clerk of courts, and presented and filed in open court, and a verbal motion for continuance, made thereon in open court, were made in the immediate presence of the court.

The false affidavit was not therefore a "constructive contempt," but a "direct contempt," made in the presence and hearing of the court, and while the court was in session. Whether the affidavit was made in the hope that a more favorable jury might be obtained at the next term of court or to permit witnesses to escape does not appear from the record, but we know of nothing that tends more to create disrespect for courts, disrespect for the law, and to hinder and delay the administration of justice than unnecessary delays in bringing men to trial, and when such delays are caused by false affidavits presented to the court we have no hesitation in saying that such a proceeding is a direct contempt of court.

It is said in 13 C. J. 63:

"It is the almost universal rule that where contempt is direct, in the immediate presence of the court, summary punishment may be inflicted without affidavit, notice, rule to show cause, or other processes; but where witness asks time to file a written explanation before he is punished for contempt, it should be allowed. In such cases, formal entry showing the proceedings constitutes the full record. Nevertheless, it seems that the court may adopt such mode of trying the question of contempt as it deems proper, only so that the person charged may be given opportunity for explanation and defense."

It has been held that publication in a newspaper, circulated in a city where a trial is held, tending to interfere with the due administration of justice, may be punished as a direct contempt and without complaint. Hughes v. Territory, 10 Ariz. 119, 85 Pac. 1058, 6 L. R. A. (N. S.) 572; Telegram Co. v. Commonwealth, 172 Mass. 294, 52 N. E. 445, 44 L. R. A. 159, 70 Am. St. Rep. 280; State v. Frew, 24 W. Va. 416, 49 Am. Rep. 257. In this case the warrant of arrest clearly stated the charge. The contempt was direct, and in the presence of the court. No affidavit or complaint was necessary. The defendant had full opportunity to present his defense.

We have carefully examined all the other assignments of error, and, finding no error, the judgment and order of the court are affirmed.

Note.—Reported in 196 N. W. 500. See, Headnote, American Key-Numbered Digest, Contempt, Key-Nos. 6, 52, 13 C. J. Sec. 87.