GEORGE N. WOODBURY *vs.* COMMONWEALTH.

ALDINO FELICANI *vs.* SAME.

FRANK PIESCO *vs.* SAME.

Suffolk.  Plymouth.  Plymouth.  January 8, 1936. — September 9, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Contempt. Pleading, Criminal,* Information. *Practice, Criminal,* Contempt proceedings, Waiver.

No error appeared in a record of the Superior Court adjudging to be in contempt persons who had printed and circulated in the vicinity of the court immediately before a certain indictment was to be tried a circular referring to the coming trial, the tendency of which on its face was improperly to influence prospective jurors, to make known to the public irrelevant allegations of fact, to disparage the prosecution of the indictment, and to create a lack of confidence in testimony likely to be presented by the Commonwealth at the trial, although there was no proof other than the circular itself that it was so intended or that it came to the attention of any prospective juror, and although it did not name a particular court.

To establish that a certain act constitutes contempt of court, no other intent needs to be proved than the intent to do the act.

A prosecution for contempt in printing and circulating a paper tending to interfere with and to prejudice the trial of an indictment might be initiated by affidavit of the district attorney annexing a copy of the paper and alleging on information and belief that the respondent had circulated it in the vicinity of the court immediately prior to the trial, and that such acts tended to obstruct and degrade the administration of justice in the court.

On an information charging a respondent with contempt of court, his appearance and admission of the facts charged, without objecting to their sufficiency, constituted a waiver of irregularities merely formal.

THREE PETITIONS FOR WRITS OF ERROR, the first filed in the Supreme Judicial Court for the county of Suffolk, and the second and third in Supreme Judicial Court for the county of Plymouth.

The petitions were heard together by *Lummus,* J., who reported the cases for determination by the full court, the parties agreeing, and he assenting, "that the record sent up in the Woodbury case be printed without printing the record sent up in the other cases, for the record sent up in the Woodbury case presents all the cases."

*E. Spiegel,* (*A. F. Reel* with him,) for the plaintiffs in error.

*J. J. Ronan,* Assistant Attorney General, for the Commonwealth.

RUGG, C.J.    These are petitions for writs of error to reverse judgments whereby fines were imposed upon the petitioners in proceedings for contempt of court based on the circulation by them of printed circulars alleged to have a tendency to obstruct the administration of justice in a pending criminal case. The assignments of error in each petition were these: "1. The said letter or circular was not intended to injure or interfere with the prosecution or defense of said trial.  2. The said letter in no way mentions the court.  3. The said letter does not reflect upon the dignity of the court; was not intended to hinder or interfere with the due administration of justice, and did not in fact hinder or interfere with the due administration of justice.  4. That the acts of the defendant as alleged in the affidavit or petition of the district attorney do not constitute contempt of court, in fact or in law, and that the complaint does not charge a crime."    Return was made of the record of the Superior Court in each case.  The Commonwealth pleaded *in nullo est erratum* as to each petition. No evidence was offered at the hearing before the single justice, but questions of law were argued on the record. The cases were reported without decision for determination by this court.  By assent of the parties the record as printed was much abbreviated.  The proceedings in contempt in each case as shown by the docket entries were commenced in the Superior Court on June 26, 1935, by an affidavit signed by the district attorney, wherein the court was advised that in the preparation and trial of an indictment returned by the grand jury for Plymouth County in June, 1935, against Ralph Piesco, it came to the attention of the district attorney (1) that circulars (one being annexed marked "A") printed by Felicani were being distributed in Brockton by Frank Piesco immediately prior to the trial of that case, and (2) that a further circular or letter (one being annexed marked "B") was circulated by mail and by

other means by Woodbury, who has admitted responsibility for printing and distributing the same. It was stated in the affidavit that "all of the aforesaid acts tend to obstruct and degrade the administration of justice in this court" and that they were brought "to the attention of this court to take such actions as the facts herein disclosed" may require. A certificate of oath to the affidavit bore date of June 27, 1935. Further docket entries are "Offense: Contempt. Place: Brockton." Notice issued to each of these three persons, being the present petitioners, returnable at Brockton on June 27, 1935, to appear and show cause why he should not be adjudged in contempt of court. All three appeared and were represented by counsel. Woodbury and Felicani admitted and Frank Piesco denied the allegations in the affidavit. Each was adjudged in contempt of court and a fine was imposed.

The heading on the first page of circular "A" was "Defend Ralph Piesco." Under this was the picture of a man, followed by the words in conspicuous type "Smash the gangster frame-up against him." The body of the circular narrated internal friction and disorder in a labor union, in which Frank Piesco was assaulted and later "Ralph Piesco, a supporter of the opposition group, found himself attacked . . . by Tonoli. This was the climax to the Murphy-Collins-Goodwin gangster methods of intimidating workers who had the courage to fight corruption and in the interest of the rank and file." The circumstances attending the arrest of Ralph Piesco were described with the comment, "It is very plain the Murphy clique is going to try to railroad Piesco. . . . Spread these facts to every worker you know." The concluding words were these, "Support the Defense Committee in the fight to free the framed-up Piesco. A victory for Piesco means a victory for trade union democracy in the Brotherhood. PIESCO DEFENSE COMMITTEE P. O. Box 831, Brockton, Mass." Scattered through the text were these headlines in large type: "Down with Gangster Tactics," "Here are the facts," "Stoolpigeon attempts frame-up." The heading of the other

circular or letter "B" was "Ralph Piesco Defense Committee. P. O. Box No. 831, Brockton, Mass." It was addressed "Brothers and Sisters." It referred to the assaults upon Frank and Ralph Piesco and stated that the latter had been "framed up on the charge of 'assault with intent to kill' after he himself was attacked and stabbed by one of the Murphy-Goodwin henchmen : . . . the clique in Brockton is working overtime to railroad him to jail, so as to break up the amalgamation forces. This is not a criminal case. It is a labor case . . . . We must put all our forces behind the defence of Brother Piesco." Contributions were sought for such defence. This was signed by Woodbury as secretary of the defence committee.

The record does not disclose the evidence presented at the trial of the contempt proceedings in the Superior Court. No findings of fact were made by the trial judge. Therefore it must be presumed that there was sufficient evidence to support the finding of contempt. That general adjudication imports a finding of all incidental and inducing facts necessary to the conclusion reached. It must be accepted as true unless tainted by some error of law apparent on the record. *Blankenburg* v. *Commonwealth*, 272 Mass. 25, 31. The assignments of error therefore are the basis of the contentions of the plaintiffs in error, and must be examined to ascertain whether wrong has been done them.

There is no merit in the first assignment of error to the effect that the printed matter was not intended to interfere with the trial. No other intent than the intent to do the act which constitutes the contempt is required to subject one to punishment for contempt. It is the nature of the act and not the accompanying intent which is the determining factor in establishing contempt. "As regards the question, whether a contempt has or has not been committed, it does not depend on the intention of the party, but upon the act he has done." Taney, C.J., in *Wartman* v. *Wartman*, Taney, 362, 370. *Cartwright's Case*, 114 Mass. 230, 239. *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294, 300. *Globe Newspaper Co.* v. *Commonwealth*, 188 Mass.

449, 453. *Merrimack River Savings Bank* v. *Clay Center*, 219 U. S. 527, 536. *State* v. *Howell*, 80 Conn. 668, 671, 672. *Matter of Sturoc*, 48 N. H. 428, 432.

The second assignment of error to the effect that there was no mention of the court in either of the circulars is not of consequence. The inference is plain from the summary of the circulars already recited that they relate to the trial in court of a serious criminal offence. In a community like Plymouth County, it might be found to be common knowledge that the offence described in the circulars would be tried in the Superior Court. The assault there described followed by an indictment would be likely to be known by the general public. The implication is that the trial was either in progress or to occur in the near future. The circulars are of a character to impair or destroy the due and orderly procedure of a trial in court. The receipt of such a circular by a prospective or actual juror would naturally be prejudicial to a fair trial. Discussion of the contents of the circulars by the general public would tend to create bias and prejudice on the part of some jurors. The tone of the circulars is that the prosecution is oppressive and not founded on truth. They denounce the proceeding in court in opprobrious and abusive terms. They are manifestly designed in part to persuade those who read them to adopt their views that the prosecution ought not to prevail. It may be contempt of court to disparage the cause of one or the other of the parties to a case to be tried. Public dissemination of the ideas set forth in the circulars had a tendency to bring odium upon the testimony to be produced by the Commonwealth and to inspire distrust of its witnesses. No further discussion is needed to demonstrate the liability of such circulars to engender hostility incompatible with a judicial trial where no facts ought to be considered and weighed except those introduced in evidence. *Matter of Sturoc*, 48 N. H. 428, 432. This is the tendency of the circulars regardless of the court in which the case may be tried.

The third assignment of error to the effect that the circular or letter does not reflect upon the dignity of the court and did not hinder the administration of justice cannot be sus-

tained. The general promulgation among workers in various shoe factories in Brockton of appeals in temper like those here in issue might well be found to cast reproach upon the capacity of the court to do justice according to law. A heated discussion of the internal dissensions of a labor union and the vituperative epithets applied to the opposing faction with reference to action by a court established by law are inappropriate for the neighborhood of a criminal trial. Such conduct may be found to reflect upon the competency of the court to try the indictment in accordance with sound principles and on admissible evidence, and to obstruct or embarrass a court in the performance of its duties. Much of the matter set forth in the circulars related to collateral and extraneous issues, evidence concerning which a court would exclude upon the trial of the indictment. *Dupee* v. *Lentine*, 147 Mass. 580. Such conduct may be found to have a tendency to interfere with the course of justice and to warrant a conviction for contempt. *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402. *State* v. *Hazeltine*, 82 Wash. 81. As already pointed out, the intention with which these acts were done is not material. *Globe Newspaper Co.* v. *Commonwealth*, 188 Mass. 449, 453. It is not necessary that it should appear that the circular came to the attention of any actual or prospective juror. The criterion is not the influence upon the minds of particular persons but the reasonable tendency of the acts done to bring about a pernicious result. "In other words, having regard to the powers conferred, to the protection of society, to the honest and fair administration of justice and to the evil to come from its obstruction, the wrong depends upon the tendency of the acts to accomplish this result without reference to the consideration of how far they may have been without influence in a particular case." *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402, 421. *Sinclair* v. *United States*, 279 U. S. 749, 764. *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294, 300. *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 373.

The fourth assignment of error is that the acts set forth in the affidavit do not constitute contempt of court and that no crime is charged. It is not necessary further to

review the substance of the statements set forth in the circulars attached to the affidavit. It is plain that those statements had a tendency to bring calumny and reproach upon the prosecution involved in the criminal trial and to create a lack of confidence in some of the testimony likely to be presented at that trial. They emphasized factors which were quite extraneous to the merits involved in the trial of the indictment and which could not rightly be shown in evidence at the trial. There were before the court in *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294, writs of error concerning adjudications of contempt of court against the proprietors of two newspapers for publishing an article concerning a case on trial in the Superior Court. It was said at page 298, "There are no statutes in this Commonwealth regulating the proceedings in the trial and punishment of contempt of court . . . In the present cases it was not necessary that a formal complaint should first have been made to the court. The contempt, if there was one, was not, strictly speaking, committed in the presence of the court, but it related to a trial then proceeding before the court. In each case a summons to the plaintiffs in error was issued by the court, of its own motion and without complaint made, to show cause why the corporations should not be adjudged in contempt for publishing an article dealing with a matter on trial before the court. When it comes in any manner to the knowledge of the presiding justice of a court that articles are published in a newspaper circulated in the place where the court is held which are calculated to prevent a fair trial of a cause then on trial before the court, the court of its own motion can institute proceedings for contempt." To the same effect in substance is *Globe Newspaper Co.* v. *Commonwealth*, 188 Mass. 449. It is clear upon these authorities that the publication and the distribution of circulars of the nature of those here in issue might be found to constitute contempt of court. *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402. *In re Cheeseman*, 20 Vroom, 115, 142, 143. The part of this assignment of error to the effect that a crime was not charged in the affidavit is not relevant. The publica-

tion in the circumstances disclosed, of the matters set forth in the circulars having a tendency to interfere with a fair trial upon the indictment, was itself criminal in nature "as tending to obstruct the administration of justice." *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass. 449. *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294. See *Commonwealth* v. *Reynolds,* 14 Gray, 87. It is not essential that the acts charged constitute a crime in any other sense.

The plaintiffs have argued that the affidavit was irregular. If it be assumed without so deciding that this point is open under the assignments of error, it has no merit. It is more formal than the procedure followed in *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, and there held sufficient. In *Hurley* v. *Commonwealth,* 188 Mass. 443, the proceeding for contempt begun by complaint to the court made by an assistant district attorney was held to be sufficient as carrying with it the sanction of his oath of office without any formal oath. In *Cartwright's Case,* 114 Mass. 230, the proceeding was instituted by an information signed by the Attorney General. Clearly under these authorities there was no error in the way or in the form in which the proceedings for contempt were instituted in the cases at bar.

The punishment for contempt of court in cases like the present is "solely for the vindication of public authority and the majesty of the law. In general, the proceedings leading up to the punishment should be in accordance with the principles which govern the practice in criminal cases." *Hurley* v. *Commonwealth,* 188 Mass. 443, 445. In the prosecution of contempt not committed in open court, "the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defence or explanation." *Cooke* v. *United States,* 267 U. S. 517, 537. Technical accuracy of pleading however is not required. *Schwartz* v. *United States,* 217 Fed. 866. *Conley* v. *United States,* 59 Fed. (2d) 929. No discussion is required to demonstrate that the affidavit, including as it does statement of time and place and nature of the contempt, was sufficient compliance

with law, as to the plaintiffs in error, Piesco and Felicani. Concerning Woodbury it is a little less clear as to the place where the contempt was committed. There is no specific allegation restricted to him that his acts were performed in Brockton, although there is some implication to that effect. The docket entry is precise on this point. The circular or letter over his name shows that it emanated from Brockton and his address in that city is given. Reply is requested at that address. The circulation of the letter was stated to be "by mail and by other means." This together with the other parts of the affidavit carries the implication that the distribution and publication of the document were in Brockton or in the immediate neighborhood where the trial was to take place. The same affidavit covers all three persons. Woodbury appeared before the court in response to notice and was represented by counsel. He became subject to the jurisdiction of the court. *Henry* v. *Sweeney*, 216 Mass. 112. *Paige* v. *Sinclair*, 237 Mass. 482. He offered no objection to the sufficiency of the charges against him. He admitted the allegations charged in the affidavit. One of these allegations was that the acts committed by him tended "to obstruct and degrade the administration of justice" in the Superior Court. The court had jurisdiction of the subject matter. If there were any irregularities, they were not fatal in nature and Woodbury must be held to have waived them. *O'Connell* v. *United States*, 40 Fed. (2d) 201. *Lang* v. *United States*, 55 Fed. (2d) 922. *United States* v. *McGovern*, 60 Fed. (2d) 880, 888. *Clancy* v. *Wallace*, 288 Mass. 557, 565.

It is not necessary to review and distinguish the numerous cases from other jurisdictions cited by the plaintiffs in error where the practice and procedure as to contempt of court differ from those established by our own decisions, to which reference has been made. All the arguments have been considered but need not be further examined. No reversible error is shown on the record. The result is that in each petition the entry may be

*Judgment affirmed.*