# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00087-CR

Thomas Dale DeLay, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. D-1-DC-05-904161, HONORABLE WAYNE PATRICK PRIEST, JUDGE PRESIDING

## DISSENTING OPINION

Because I do not agree with the majority opinion's conclusions regarding the legal sufficiency of the evidence supporting appellant's convictions, I respectfully dissent.

The majority concludes that there was legally insufficient evidence of any felony offense that "generated proceeds" and, therefore, that the State failed to establish an element of the crime of money laundering as alleged in the indictment, i.e., that the transaction appellant conducted, supervised, or facilitated involved the proceeds of criminal activity. *See* Tex. Penal Code § 34.02(a)(2) ("A person commits an offense if the person knowingly: . . . conducts, supervises, or facilitates a transaction involving the proceeds of criminal activity.").[1]  The majority rejects the

---

[1] The majority opinion states that the State was required to establish that "there was a felony criminal offense which generated proceeds." Slip op. at 9.  The statutory definition is somewhat broader, however, providing that "proceeds" are "funds acquired or derived directly or indirectly from, produced through, or realized through an act." *See* Tex. Penal Code § 34.01(4).  Therefore, the State's burden is more accurately described as establishing that funds were acquired or derived

State's contention that certain corporate contributions made to TRMPAC were made in violation of subchapter D of the Election Code and therefore constitute such proceeds. *See* Tex. Elec. Code §§ 253.003(a) (unlawfully making or accepting contributions); 253.094 (prohibited corporate contributions).

With the exception of the specific types of contributions expressly authorized by subchapter D of Election Code chapter 253 (sections 253.091-.104), corporations are prohibited from making "political contributions."[2] *See id.* § 253.094. The lion's share of the corporate contributions to TRMPAC in the present case do not fall within any of the categories authorized by that subchapter. First, they do not qualify as contributions on a "measure" authorized by section 253.096 because TRMPAC was not a committee devoted exclusively to measures. *See Ex parte Ellis*, 309 S.W.3d 71, 87 (Tex. Crim. App. 2010) ("[A] corporation can contribute money to support or oppose a measure, but only if it gives that money to an entity devoted exclusively to measures, i.e., an entity that does not contribute to candidates. A corporation violates the law if it makes a contribution to a political committee for the purpose of supporting or opposing a measure if that political committee also contributes to candidates."). Second, most of the corporate contributions here had "no strings attached" because the corporate contributors failed to designate or limit TRMPAC's use of the contributions. *See id.* at 88 (characterizing contributions not designated for specific expenditures as having "no strings attached"). Consequently, these contributions could not

directly or indirectly from, produced through, or realized through a felony offense.

[2] Political contributions include "campaign contributions" and "officeholder contributions." Tex. Elec. Code § 251.001(5). A "campaign contribution" is defined as "a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." *Id.* § 251.001(3).

qualify as political expenditures authorized by section 253.100. *See* Tex. Elec. Code § 253.100 (a) (permitting corporate political expenditures only to finance "establishment or administration" of general-purpose committee). In *Ellis*, the court of criminal appeals explained that in order for a corporate contribution to a political committee to constitute a section 253.100 expenditure, the contributor must have designated that the contribution be used for an authorized purpose. 309 S.W.3d at 88 ("A contribution [by a corporation] with no strings attached would not qualify as [a section 253.100] expenditure."). Finally, because TRMPAC was neither a political party nor the principal political committee for a party, the corporate contributions were not authorized by section 253.104. *See* Tex. Elec. Code § 253.104 (permitting corporate contributions to political party under certain defined conditions).

The court of criminal appeals in *Ellis* held that corporations may not make contributions to political committees without either expressly or implicitly limiting their use to a specific authorized purpose:

> It would be more accurate to say that there is no such thing as a *legal* undesignated corporate political contribution. Individuals can legally make undesignated political contributions, but corporations cannot. A corporation *must designate the purpose* of the political contribution by contributing to a political committee that is exclusively devoted to measures, by making expenditures for maintenance or operation of a corporate political committee, or by contributing to a political party under certain narrow conditions.

*Ex parte Ellis*, 309 S.W.3d at 88 (emphases added). The corporate contributions in the present case were not so limited and do not fit within any of the categories of political contributions or political expenditures authorized by subchapter D. Thus, the corporate contributions to TRMPAC were made

in violation of Election Code sections 253.003 and 253.094, an offense constituting a third degree felony. *See* Tex. Elec. Code §§ 253.003(a), (e) (knowingly making contribution in violation of chapter 253), .094(c) ("An offense under this section is a felony of the third degree."). Accordingly, the relevant corporate contributions to TRMPAC, being undesignated, constitute proceeds of criminal activity.

Moreover, even if undesignated corporate contributions to TRMPAC could somehow fall into a category of political contributions or expenditures authorized by subchapter D, the evidence presented at trial would still be legally sufficient to support a jury finding that those corporate contributions were in fact made with the intent that they be used to support individual candidates for public office and were, therefore, made in violation of subchapter D. Evidence is legally sufficient if, after reviewing it in the light most favorable to the verdict, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the *sole* judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899.

A rational juror hearing the evidence presented in this trial could have found that the relevant corporate contributions to TRMPAC were made with the intent that they be used to support

4

individual candidates or be put to other purposes not authorized by subchapter D. The brochures, forms, and letters used by TRMPAC to solicit these contributions included statements such as the following:

- "TRMPAC is focused on raising and giving funds directly to Republican candidates for state house, state senate, and potentially all statewide offices."

- "Your support today will go directly to help Republican candidates in Texas successfully run and win their campaigns."

- "All contributions, whether to the PAC or individuals, will be used for direct campaign expenses."

- "Unlike other organizations, your corporate contribution to TRMPAC will be put to productive use. Rather than just paying for overhead, your support will fund a series of productive and innovative activities designed to increase our level of engagement in the political arena."

I disagree with the majority's assertion that these statements are evidence only of TRMPAC's intentions and do not constitute evidence of the intent of the corporate contributors. As the court of criminal appeals observed, "intent can be ascertained with respect to corporations for the purpose of imposing criminal liability." *Ex parte Ellis*, 309 S.W.3d at 90 (citing *New York Central & Hudson River R.R. Co. v. United States*, 212 U.S. 481, 483 (1909) ("'There is no more difficulty in imputing to a corporation a specific intent in criminal proceedings than in civil.'" (quoting *Telegram Newspaper Co. v. Commonwealth*, 52 N.E. 445, 446 (Mass. 1899)))). A corporation's intent may be divined from the actions taken by its agents equipped with knowledge of certain facts. *See Vaughan & Sons v. State*, 737 S.W.2d 805, 806 (Tex. Crim. App. 1987) (observing that it is generally accepted that intent of corporation's employees or agents may be imputed to corporation).

5

A rational juror could find that a corporation that makes a contribution to a political committee whose stated primary purpose is to raise and give funds directly to candidates, in response to a solicitation that essentially promises that the funds will be used for "direct campaign expenses" "rather than just paying for overhead," is doing so with the intent that its contribution go to an individual candidate or campaign.

The majority emphasizes that representatives of several contributing corporations testified that they assumed their donations would be used for lawful purposes and that they intended to comply with the law, but that testimony does no more than create a fact issue with regard to their intent. Such a fact issue is, of course, properly resolved by the jury, whose judgment regarding a witness's credibility we may not supplant with our own. *See Brooks*, 323 S.W.3d at 899 (in applying legal-sufficiency standard, reviewing court is required to defer to jury's credibility and weight determinations).

Finally, I disagree with the majority's statement that the State failed to prove the applicable culpable mental states because the corporations "could lawfully make donations to TRMPAC." Slip op. at 13. It does not logically follow that merely because a corporation *could* make a legal contribution, it necessarily *did* make a legal contribution. Again, the presence or absence of the requisite intent was simply a fact issue to be resolved by the jury.

For these reasons, I disagree with the majority's conclusion that there was legally insufficient evidence to support a jury finding that the corporate contributions at issue here were the

proceeds of criminal activity.[3] I therefore do not join in its holding that the State failed to establish

an element of the crime of money laundering as alleged in the indictment, specifically that appellant

conducted, supervised, or facilitated a transaction involving the proceeds of criminal activity.

[3] I also have serious reservations regarding the majority's holding that appellant's agreement to transfer $190,000 in corporation contributions to the RNSEC in exchange for the RNSEC's making equivalent donations to individual campaigns could not be considered an act creating criminal proceeds that is separate from the transfer itself. The Election Code prohibits not only making unauthorized contributions but also the *agreement* to make an unauthorized contribution. *See* Tex. Elec. Code § 251.001(2) ("'Contribution' means a direct or indirect transfer of money, goods, services, or any other thing of value and *includes an agreement made* or other obligation incurred, whether legally enforceable or not, *to make a transfer*." (emphases added)). Moreover, the offense of money laundering contemplates that the act that criminalizes the proceeds need not be completely unrelated to the act that "launders" the money but may also be a *completed phase of an ongoing transaction*. *See, e.g.*, *United States v. Morelli*, 169 F.3d 798, 804, 807-08 (3d Cir. 1999) (criminal proceeds may derive from completed offense or completed phase of ongoing offense: "This is true even if the money laundering transaction can also be considered a part of the continuing specified unlawful activity." (citing *United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994))). Because the Election Code prohibits an agreement to make an unauthorized contribution, once appellant made such an agreement, that specified unlawful activity had been completed, and funds were "acquired or derived directly or indirectly from, produced through, or realized through" that act. *See* Tex. Penal Code § 34.01(4) (defining "proceeds"). In other words, the *agreement* itself was a distinct transaction and a distinct offense. *See United States v. Szur*, 289 F.3d 200, 214 (2d Cir. 2002). Although the majority holds that the transaction appellant agreed to was not itself a violation of the Election Code, I question whether the statute permits the exchange of corporate money for individual money through a series of transactions that concludes with individual candidates receiving an amount of money identical to that contributed by the corporations. Such conduct appears to be an attempt to circumvent, rather than comply with, Election Code restrictions on the use of corporate political contributions.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Gaultney*

Filed:   September 19, 2013

Publish

*   Before David Gaultney, Justice, Ninth Court of Appeals, sitting by assignment.  *See* Tex. Gov't
       Code § 74.003(a).