Louis Hanzes, administrator, & others *vs.* Carmine Flavio,
administrator.

Suffolk.   November 12, 13, 1919. — January 6, 1920.

Present: Rugg, C. J., De Courcy, Pierce, & Jenney, JJ.

*Writ of Error.   Practice, Civil,* Writ of error, Report, Acceptance of service, Ap-
pearance. *Partnership.   Attorney at Law.   Evidence,* Of death.   *Jurisdiction.
Estoppel.   Judgment.   Res Judicata.*

The proceedings upon a writ of error are according to the common law except as
modified by usage.

Upon a report by a single justice of this court of his findings of fact and rulings of
law upon a writ of error, there can be no review of questions of fact.

Upon a writ of error assigning that a judgment in tort should be reversed because
the court never had jurisdiction over two of four defendants named therein, a
determinative question was, whether the four defendants were partners at the
time of the bringing of the action.   The case was heard by an auditor.   The
evidence was conflicting and would have warranted a finding either way.
The auditor found that, previous to the bringing of the original action, the
two plaintiffs in error over whom, it was contended, the court did not acquire
jurisdiction, had retired from the partnership.   The case was heard by a single
justice upon the pleadings and the auditor's report.   He adopted the findings
of the auditor and reported the case to the full court for determination.   *Held,*
that the finding above described was a determination of a question of fact,
which, upon the record, could not be reviewed.

A court acquires no jurisdiction over a defendant where no process has been served
on him and an attorney at law without authority accepts service of process
and enters an appearance for him in court.

If, in an action at law against several defendants, an attorney at law files an ap-
pearance card headed with the name of the plaintiff and of only one defendant,
and bearing, above the attorney's signature, the statement, "In the above
action I appear for Defendant," it cannot be said that this is a general appear-
ance for all of the defendants.

The fact that in 1910 four partners filed with the clerk of a municipality the
certificate required by St. 1907, c. 539, stating their names as partners, does
not estop two of the four from asserting, in a writ of error to set aside a judgment
obtained in an action of tort brought against the four as partners two years
after the filing of the certificate, that, before the tort complained of and before
the bringing of the action, they had withdrawn from the partnership.

A plaintiff in error, the administrator of the estate of a Greek, who was one of
four defendants against whom a judgment in an action of tort for personal
injuries and causing death had been obtained, contended that the judgment
should be set aside because at the time of the verdict and judgment his in-
testate was dead and no suggestion to that effect had been made upon the
record and no administrator of his estate had been summoned to defend.   There
was evidence tending to show that late in 1912 the intestate left this country

for Greece for the purpose of fighting in the war in which his country then was engaged; that in July, 1913, a battle was fought in that war lasting all day, in which many were killed and wounded and which resulted in a retreat of the Greeks leaving their enemy in possession of the battlefield where the dead and wounded of the Greeks were left; that, at about ten o'clock in the forenoon of the day of the battle, the intestate was seen engaged in battle and uninjured; that since that day he had not been seen nor heard from; that funeral services in his memory were held by his relatives in his native town in Greece and his relatives in Greece had written to their friends in this country stating that he was dead; that he left property in this Commonwealth and that administration had been taken out on his estate, the petition therein stating that his death occurred in July, 1913. *Held*, that such evidence was competent upon the question, whether the intestate was killed in battle, and warranted a finding that he had died in the battle or shortly thereafter.

A judgment upon the merits of an earlier suit is not a bar in a later suit between the same parties upon a different cause except as to those issues which actually were tried and determined in the earlier suit.

In a suit in equity by one who, as the plaintiff in an action of tort against four, alleged therein to be copartners, had obtained a judgment, to have reformed a bond which had been given in that action to dissolve an attachment, two of the defendants in their pleadings contended that the court never had obtained jurisdiction of them in the action of tort. The judge found merely that the bond as executed was not in the form intended by the defendants' attorney, who drafted it, and that a case of mutual mistake was established, and by his order a decree was entered for the plaintiff. Later the defendants in the action of tort brought a petition for a writ of error to set aside the judgment in the action of tort on the ground that the court never had jurisdiction over two of the defendants. *Held*, that the decree in the suit in equity did not make *res judicata* in the writ of error the question, whether the court in the original action of tort ever had jurisdiction over the two defendants in question.

WRIT OF ERROR, issued on April 25, 1916, to the Chief Justice of the Superior Court upon the petition of three and the administrator of the estate of a fourth of those who were named as the defendants in an action of tort begun by a writ dated November 22, 1912, returnable to the Superior Court for the county of Suffolk on the first Monday of February, 1913, in which a judgment for $1,395.31 had been rendered for the plaintiff, one Carmine Flavio, administrator of the estate of Emilio Flavio. The four defendants in that judgment were George K. Anastos, Peter Contakis (called Contakes in the original writ), George Masganas (called Mosganas in the original writ) and Nicholas Kaleavas (called Kaleave in the original writ).

The plaintiffs in error assigned as errors in the record the following:

"1. The Superior Court acquired no jurisdiction in said action

over said Kaleavas or over said Contakis, because said Milne had no authority to act as attorney for either of them in said action or to accept service for either of them therein.

"2. At the respective dates of said verdict and judgment said Kaleavas was dead, but his.death was at no time suggested on the record; neither was said Hanzes (who was on March 26, 1914, duly appointed administrator of his estate by the Probate Court for Suffolk County) summoned in to defend."

The Chief Justice of the Superior Court in his return transmitted the records in the action of tort of Carmine Flavio, administrator of the estate of Emilio Flavio, against the plaintiffs in error, and in two petitions to vacate that judgment, brought respectively by Contakis and by Hanzes, administrator of the estate of Kaleavas. These petitions were dismissed, the Contakis petition on February 14 and the Hanzes petition on May 15, 1916, for want of prosecution.

The case was referred to an auditor. It appeared that no service was made of the original writ in the action of tort, and that James W. Milne, Esquire, on December 19, 1912, indorsed thereon an acceptance of service in behalf of "George K. Anastos, Peter Contakes, George Mosganas and Nicholas Kaleave."

The appearance signed and filed by Maurice Bushman, Esquire, referred to in the opinion, read as follows: "Flavio, Admr. plff v. Anastos dft. In the above action I appear for Defendant," followed by his signature.

The report of the auditor, so far as it related to the death of Kaleavas, read as follows:

"The defendant in error denies the fact of the death of Kaleavas, and, against the objection of the defendant in error, I received the evidence of certain witnesses offered for the purpose of proving death, the evidence being as follows:

"These witnesses testified that Kaleavas left this country for Greece late in the year 1912, for the purpose of fighting in the war in which his country was then engaged. On July 15, 1913 (according to the Greek calendar, which according to our calendar was August 6, 1913), the Greeks and their enemies engaged in a battle which lasted all day, and many were killed and wounded, and resulted in a retreat of the Greeks and the enemy in possession of the battlefield. The dead and wounded of the Greeks were left

on the field of battle. At about ten o'clock in the forenoon of that day Kaleavas was seen by two of the witnesses who testified before me. He was then engaged in the battle and uninjured. Late in the afternoon these witnesses were told by others who had been in the battle that he had been killed, and one of the witnesses was told by an officer of the regiment that Kaleavas had been killed. He has never been seen or heard from after that day. After a short time his relatives in Vassara held funeral services in his memory, and his relatives in Vassara have written letters to friends in this country stating his death. It did not appear that his relatives had any other or further knowledge of his death than the matters above stated. There was no evidence produced before me that any person had seen his dead body or that any person had any personal knowledge that he had been killed or wounded. No public records of his death, nor any official report of the Greek Army that he had been killed, were produced, and it was not made to appear whether any attempt had been made to ascertain whether such records or reports existed. A newspaper printed in Greece published an account of his death, with his picture. A copy of this newspaper account was introduced in evidence, and the picture was identified by witnesses as being the same person as the Kaleavas here in question. He had property in this country, and, at the request of his relatives, Louis Hanzes filed a petition for administration of his estate, stating in the petition that Kaleavas died on August 6, 1913. This petition was duly allowed and administration granted on March 26, 1914. A copy of the petition and decree was introduced in evidence.

"The defendant in error objected to the admission of any of the evidence above stated, as being improper evidence for the purpose of proving death, but I admitted it, and the defendant in error requested that his objection be noted and the question be reported.

"This was all of the evidence upon which a finding could be based that Kaleavas was dead at the time when the judgment was entered. If, as matter of law, the evidence was properly admitted and was sufficient to prove death, then I find that Kaleavas died on or about August 6, 1913, but if the evidence was improperly admitted, or was insufficient to warrant such a finding, then it necessarily follows that the plaintiffs in error have failed to sus-

tain the burden of proof necessary to a finding that he was dead on the date of the entry of judgment."

As to the suit in equity to reform the bond given in the original suit, the auditor found that, after suit had been brought on the bond, "it had been discovered that, by mistake, the wrong form of bond had been given and that, instead of the ordinary form of bond to dissolve attachment, the form intended to be given by a claimant of funds in the hands of a trustee had been used. The plaintiff thereupon filed a bill in equity in the Superior Court, seeking to have the bond reformed into the form which it had been intended to give. Anastos, Masganas, Contakis, Hanzes (administrator of the estate of Kaleavas), and each of the sureties on the bond were made parties defendant. Each of the defendants named therein appeared and filed answers. The answers of Contakis and Hanzes alleged, among other things, that the court had no jurisdiction over Contakis and Kaleavas in the original action, because Mr. Milne had no authority to accept service for them or to appear and answer for them, and that neither was a member of the copartnership at the times in question. The case came on for hearing before a judge of the Superior Court, and all of the plaintiffs in error were present, but Mr. Milne was the only witness called to testify, and he testified only as to the form of the bond which it had been intended to give. Mr. Milne was counsel of record in that matter, and the answers were prepared under his direction and he took part in all that was done. The defendants in that proceeding did not offer any evidence for the purpose of proving the matters alleged in the answers, and in the judge's memorandum of finding and order for decree no mention was made of any issue except the form of the bond intended to have been given. The judge found that the parties intended to give the bond in the form ordinarily used to dissolve attachment, and that a case of mutual mistake was made out, and ordered a decree to be entered reforming the bond, and such a decree was entered, from which no appeal was taken. Certified copies of the pleadings, memorandum of findings, and final decree were produced in evidence, and I have attached the same to and filed them with my report.

"Before the entry of decree in the last mentioned matter the petition for writ of error was filed in this court. Mr. Milne is not counsel of record in the present proceedings, and did not partici-

pate in the preparation of the petition and assignments of error. He did, however, assist present counsel in securing the attendance of witnesses, and, besides himself appearing as a witness, gave assistance to counsel by suggestions made during the hearings."

The auditor stated the following as a summary of his findings:

"I find that, at the time of the acceptance of service of the writ by Mr. Milne, neither Contakis nor Kaleavas was a member of the copartnership, and that Mr. Milne had no authority to accept service for either, and that neither Contakis, Kaleavas, nor the administrator of the estate of Kaleavas thereafterwards expressly or impliedly ratified his acts of acceptance of service and filing appearance and answers for them; that Kaleavas died on or about August 6, 1913, and Louis Hanzes was, on March 26, 1914, appointed administrator of his estate, but the death of Kaleavas was not suggested of record in the original case, nor was his administrator summoned to defend."

The case was heard by *Braley, J.,* upon the pleadings and the auditor's report. He made a report to the full court substantially as follows:

"It was contended by the defendant in error that the auditor erred in the admission of evidence as to the death of Kaleavas, and that such evidence was wholly incompetent to prove the fact of death. I ruled that the evidence admitted by the auditor, that 'late in the afternoon these witnesses were told by others who had been in the battle that he had been killed and one of the witnesses was told by an officer of the regiment that Kaleavas had been killed,' and that 'a newspaper, printed in Greece, published an account of his death with his picture,' a copy of which was introduced in evidence, and the picture identified by witnesses as being the same person as Kaleavas, was inadmissible.

"I further ruled that the remaining evidence relating to the death of Kaleavas, as set forth in the report, was admissible, and to this ruling the defendant duly excepted.

"The defendant further contended, and asked me to rule, that, upon the facts found by the auditor in reference to the suit in equity . . . the plaintiffs were estopped from maintaining a writ of error. I refused so to rule, and saved the defendant's exception.

"The defendant also urged that the conduct of the defendants in the original action, and of counsel who claimed to act or pur-

ported to act for all of them before and after the case had gone to judgment, as shown by the institution of various proceedings recited in the report to vacate the judgment, was sufficient to warrant a finding that, even if Mr. Milne was not originally authorized to act for Kaleavas, Contakis, and Masganas, enough appeared to warrant a finding that, with knowledge of what had been done in their behalf, they had ratified the action of Anastos and Mr. Milne in all matters connected with the original suit. As stated by the auditor, there is no doubt that from the time of the recovery of the verdict the controversy in some form has been before the courts almost constantly. While there is ground upon which this argument can be based, the auditor saw the witnesses and I am unable to find, on the facts stated in his report, that the unauthorized acts of Anastos and Mr. Milne have ever been ratified.

"And thereupon I found all of the material facts to be as stated in the auditor's report. The defendant, upon this finding, further asked me to rule that the facts were insufficient as matter of law to reverse the judgment. I refused so to rule, and saved his exception. I find and rule that the Superior Court acquired no jurisdiction in the action of tort over Kaleavas, Masganas, and Contakis, and that at the date of the verdict, March 18, 1914, Kaleavas was dead. Nor after verdict and before judgment, on April 21, 1914, was Kaleavas's administrator, who was appointed March 26, 1914, summoned in.

"At the request of the defendant all questions of law are reported for the consideration of the full court. If no error of law is found in the rulings, the judgment is to be reversed and the writ is to issue; but if error appears, such order is to be made as the full court may determine."

*H. S. Davis,* for the plaintiffs in error.

*H. Bergson,* for the defendant in error.

RUGG, C. J. This is a writ of error to reverse a judgment entered in the Superior Court on April 21, 1914, in favor of the administrator of the estate of Emilio Flavio against four persons named therein as defendants. The grounds of error alleged are (1) that the Superior Court acquired no jurisdiction over the defendants Contakis and Kaleavas, and (2) that Kaleavas died August 6, 1913, and his administrator never appeared voluntarily and was not summoned in to defend the action. The case was sent to an audi-

tor, whose general finding was in favor of the plaintiffs on the grounds alleged. The case was then heard by a single justice of this court upon the pleadings and the auditor's report. No motion was made at any time to recommit the auditor's report, and no ruling was requested or exception taken as to its form. The only evidence submitted was the auditor's report.

1. The proceedings upon a writ of error are according to the common law except as modified by usage. *Perkins* v. *Bangs*, 206 Mass. 408. Therefore only questions of law are presented on this record. Review of questions of fact is not open.

2. There was no error in the finding that the Superior Court acquired no jurisdiction over Contakis or Kaleavas. This was the finding of the auditor, who saw and heard the witnesses. The crucial point in this connection was whether a partnership previously existing between the four persons named as defendants in the original action, known as the Vassara Fruit Company, had been dissolved before the commission of the tort on which the original action was founded and whether Contakis and Kaleavas then had retired from it and had ceased to be members of the Vassara Fruit Company. That was a pure question of fact. It is not necessary to narrate the evidence. It is enough to say that it was conflicting and would have warranted a finding either way, depending upon the degree of credence given to the testimony of the several witnesses and the inferences to be drawn therefrom and from all the circumstances. It cannot be said that any error of law was made in reaching the decision that the partnership had been dissolved and that Contakis and Kaleavas had retired. .

3. If the partnership had been dissolved before the wrong complained of, the attorney who appeared for the four defendants had no authority to accept service of process and appear for Contakis and Kaleavas, or at all events might have been found to have had no such authority. Such finding has been made. A court acquires no jurisdiction over a defendant where an attorney without authority accepts service of process and enters appearance for him in court. *Shelton* v. *Tiffin*, 6 How. 163. *Hatfield* v. *King*, 184 U. S. 162.

4. There is nothing in the contention that the appearance of Maurice Bushman was general and unquestioned for all the defendants. It was not general for all the defendants, but was

limited by terms to another defendant named Anastos. Moreover, the validity of service depends upon the authority of Mr. Milne, the other attorney.

5. The fact that a certificate under St. 1907, c. 539, was filed in the city clerk's office of Boston on March 28, 1910, stating that Contakis and Kaleavas, together with the other two original defendants, constituted a partnership under the name of the Vassara Fruit Company, did not estop Contakis and Kaleavas from asserting that they withdrew before December, 1912, when service of the writ was accepted by Mr. Milne. *Crompton* v. *Williams,* 216 Mass. 184, 187. There is nothing to indicate that the original plaintiff ever heard of the certificate or relied upon it in any way.

6. There is strong ground for inference that such acceptance of service of process and appearance, if originally unauthorized, was subsequently ratified. But that, too, was a pure question of fact, and there was no error of law in reaching the opposite conclusion.

7. The single justice ruled that certain evidence tending to show the death of Kaleavas, to which exception was noted in the auditor's report, was admissible. That evidence was in substance to the effect that Kaleavas left this country for Greece late in 1912, for the purpose of fighting in the war in which his country was then engaged; that in July, 1913, a battle was fought between the Greeks and their enemies lasting all day, in which many were killed and wounded, and which resulted in the retreat of the Greeks with their enemy in possession of the battlefield where the dead and wounded of the Greeks were left. About ten o'clock in the forenoon of that day, Kaleavas was seen engaged in battle and uninjured. Since that day he had not been seen nor heard from. Funeral services in his memory were held by his relatives in his native town in Greece, and his relatives in Greece have written to their friends in this country stating that he was dead. He left property in this Commonwealth and administration has been taken out on his estate, the petition therefor stating that his death occurred in August, 1913. These facts were all competent evidence upon the point whether Kaleavas was killed in battle.

8. Collectively such facts were sufficient to support a finding that he died in the battle or shortly thereafter. The single justice cannot be said to have committed error of law in basing his

finding to this effect upon so much of the evidence stated in the auditor's report as was competent. *Blackington* v. *Johnson*, 126 Mass. 21, 23. *Emerson* v. *Patch*, 129 Mass. 299.

9. The original plaintiff brought a suit in equity to reform the bond given to dissolve an attachment made in the original action. That suit named the same four original defendants, including Contakis and the administrator of the estate of Kaleavas. That suit related exclusively to the giving of the bond and to its form. The averments in the bill of complaint in that suit set out the entry of the action in court, but do not aver service upon or appearance by the defendant. The several answers of Contakis and the administrator of the estate of Kaleavas each fails to put in issue the service of the original writ upon him but denies that authority was given to any attorney to give a bond to dissolve attachment in that action. The denial of authority to appear relates to the averments of paragraph five of the bill, which concern the hearing before the master in chancery on the bond matter. But giving the pleadings in the equity suit a broader construction, that decision is not a bar to the present proceeding. The principle of *res judicata* is that as between the same parties a judgment upon the merits in an earlier suit is a bar, as to every issue that in fact was or in law might have been tried, to a later suit upon the same cause of action. But when the second action between the same parties is upon a different cause of action from the first, then the judgment in the former action is conclusive only upon those issues which actually were tried and determined, *Foye* v. *Patch*, 132 Mass. 105, 110. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 46. *Diebold Safe & Lock Co.* v. *Morse, ante*, 17. The present cause of action is not the same as the suit in equity to reform the bond.

10. It is necessary and pertinent to inquire what point was actually decided in that suit. In the suit in equity the judge filed a finding of fact to the effect that the bond as executed was not in the form intended by the defendants' attorney, who drafted it, and that a case of mutual mistake was established and a decree was entered for the plaintiff. It is manifest on the record that the question whether the defendants in that suit, Contakis and Kaleavas, were subject to the jurisdiction of the court in the original action was not tried nor decided. Therefore the judgment

in that suit is not *res judicata* of the issues raised in the present proceeding.

There is no error of law in the rulings made.  *Contakis* v. *Flavio*, 221 Mass. 259.

*Judgment reversed.*
*Mandate to issue accordingly.*