BOSTON AND MAINE RAILROAD *vs.* TOWN OF GREENFIELD & others.

Franklin.   September 16, 1925. — October 14, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction,* Bill of review, Laches, Abolition of grade crossing. *Review.   Grade Crossing.*

Proceedings for the abolition of a grade crossing are in equity.

A decree in proceedings for the abolition of a grade crossing, approving and confirming a report by special commissioners, filed after full hearings, that the security and convenience of the public required the abolition of the crossing and that specified changes in the highway and railroad should be made; directing by whom the work of construction should be done and corporations by whom and the proportions in which the costs should be paid, is final in its nature although the proceeding is not ended, the subsequent appointment of an auditor and other later judicial action relating to the execution and not to any modification of the decree; and a bill in equity for review is the appropriate proceeding by which to seek reversal of such a decree.

A bill of review commonly is granted only (1) for error of law apparent on the record, (2) new evidence not susceptible of use at the trial and coming to light after the decree, and (3) new matter arising after the entry of the decree.   Per RUGG, C.J.

The mere fact, that a petitioner for a bill of review of a suit in equity has not obeyed nor performed the decrees sought to be reviewed, does not as a matter of law deprive the court of jurisdiction of the proceeding.

Mere delay in bringing a petition for leave to file a bill of review does not as a matter of law deprive the court of jurisdiction to consider the matters alleged.

The time within which a petition for leave to file a bill of review must be filed is governed in this Commonwealth by general principles of equity practice.

On May 8, 1917, a final decree in proceedings for the abolition of a grade crossing of a highway with a railroad in Greenfield was entered, which ordered construction by the Boston and Maine Railroad, lessee, and proportioned the cost among that corporation, its lessor corporation, the town, and a street railway company. From August 31, 1916, to December 1, 1919, the Boston and Maine Railroad was in the hands of a receiver; on January 1, 1918, it passed into the control of the Federal Director General of Railroads, where it remained until February 28, 1920; it continued in financial distress until, in 1924, it brought a petition for leave to file a bill of review of the decree. No part of the work directed by the decree had been done. The street railway company in the meantime had become insolvent and had passed entirely out of business and had no assets. The estimated expense of the construction had increased since the time of the decree over twenty per cent. *Held,* that

(1) There was no such delay in seeking relief after the occurrence of the relevant events as amounted to laches;

(2) The circumstances required a review.

The decree to be entered in the bill of review above described was to order a reversal of the decree and to direct that the original case be further heard; and at such hearings all questions of present equity between the parties, whether arising on the original petition or from expenditures by the town in laying out new ways on the expectation of the abolition of the grade crossing, should be open for consideration and adjustment.

In the suit above described, this court approved an order that a decree vacating and reversing the final decree sought to be reviewed be entered, "but only in case the plaintiff Boston and Maine Railroad, within thirty days after this case becomes otherwise ripe for final decree, after rescript from the Supreme Judicial Court, shall file with the clerk a bond in the penal sum of $13,000, with sufficient surety . . . approved by the court or some justice thereof, conditioned to repay to the town of Greenfield the sums with interest hereinbefore mentioned, in case the new decree which may be entered . . . shall not provide for the location of the grade crossing in substantially the same place as did the decree . . . [thus vacated]."

PETITION, filed in the Superior Court on September 13, 1924, for leave to file a bill of review of a final decree entered on May 8, 1917, in proceedings for the abolition of a grade crossing of a highway and a railroad in Greenfield.

The petition was heard by *Whiting,* J., leave was given as prayed for, and the bill of review was filed.

The town of Greenfield filed a demurrer, described in the opinion, and an answer. The pleadings being completed, the bill was heard by *Lummus,* J., a stenographer having

been appointed under G. L. c. 221, § 85, and Equity Rule 35 (1905) to take the evidence. Material facts found by the judge are described in the opinion.

By order of the judge, an interlocutory decree overruling the demurrer was entered. The judge ordered that a final decree "vacating and reversing the final decree of May 8, 1917, be entered, but only in case the plaintiff Boston & Maine Railroad, within thirty days after this case becomes otherwise ripe for final decree, after rescript from the Supreme Judicial Court, shall file with the clerk a bond in the penal sum of $13,000, with sufficient surety . . . approved by the court or some justice thereof, conditioned to repay to the town of Greenfield the sums with interest hereinbefore mentioned, in case the new decree which may be entered in said case numbered 3323 shall not provide for the location of the grade crossing in substantially the same place as did the decree of May 8, 1917; and in the event of failure to file such bond, let a final decree be entered dismissing the present bill of review."

The judge then, being of opinion that the interlocutory decree and the order for a final decree so affected the merits of the controversy that before further proceedings the matter ought to be determined by this court, reported the evidence and all questions of law for such determination upon the pleadings, the stenographer's report of the evidence, the judge's memorandum of findings and rulings, the interlocutory decree overruling the demurrer, and the order for the final decree.

*M. J. Levy,* for town of Greenfield.

*L. S. Nicholson, (C. O. Pengra* with him,) for the petitioner.

RUGG, C.J. This is a petition for a bill of review filed in September, 1924. Permission to file it was granted by a judge of the Superior Court. Review is sought of a decree entered upon a petition filed in October, 1911, under St. 1906, c. 463, Part I, §§ 29–45, now G. L. c. 159, §§ 65–82, for the abolition of a grade crossing in Greenfield of a highway and the tracks of a railroad then owned by the Connecticut River Railroad, but operated and now owned and operated by the Boston and Maine Railroad. The Connecticut Valley

Street Railway Company, having a location in parts of the street although not over the crossing itself, was a party to these proceedings because it was then expected that it would construct tracks on the new highway under the bridge which would carry the railroad. A commission was appointed. Its report after full hearings was to the effect that the security and convenience of the public required the abolition of the crossing, that specified changes in the highway and railroad should be made, that the work of construction in the main should be performed by the railroad corporation and that the cost should be paid, sixty-five per cent by the railroad corporation, ten per cent by the street railway company, ten per cent by the town and fifteen per cent by the Commonwealth. The report of the commission was in all respects approved and confirmed by a decree entered on May 8, 1917. No part of the work directed by the report and decree has ever been done. On August 19, 1924, the town moved for a decree ordering the railroad corporation to proceed with the work. G. L. c. 159, § 79. Thereafter the present bill of review was filed. The Commonwealth joins in the prayer for a review, the Connecticut River Railroad consents and the receiver of the street railway company does not oppose. The town alone objects to review. It filed a demurrer founded on absence of jurisdiction, on laches, on want of right to a bill of review at this time, and on prolonged disobedience of the decree by the petitioner. It also set up in its answer lack of jurisdiction, laches and failure of the petitioner to carry out the decree.

There was a hearing upon this bill of review before a judge of the Superior Court. The material facts as found by him may be summarily stated.

The highway at the crossing is not a main artery of travel and no one is compelled to use it to reach the business center of Greenfield. Its use, however, is increasing and, so far as can be foreseen, probably will continue to increase. The railroad line is of considerable importance as a through line from Springfield in this Commonwealth to Newport in Vermont and Sherbrooke in Canada. The operation of trains over it has diminished from an average of thirty trains a

day in 1917, to about twenty-three trains. Safety devices for crossings to warn travellers of the approach of trains have been invented and improved since 1917. The estimated cost of carrying out the decree has increased from $65,800 in 1917 to $79,200.

The street railway company in 1917 was solvent and in active operation, is now entirely out of business, operates no railway, has no assets, is unable to meet any financial obligations, and cannot pay any part of the ten per cent of the cost of the abolition assessed upon it.

The financial condition of the railroad corporation is very different now from what it was in 1917. Its net income for the calendar year 1916 was almost $5,000,000, and for the period of eight years preceding, about $4,000,000. It was in the hands of a receiver from August 31, 1916, to December 1, 1919. On January 1, 1918, it passed into the control of the United States of America and was operated by it until February 28, 1920. Further findings are: "For six months after February 28, 1920, the railroad was operated by the Boston and Maine Railroad under a guaranty from the Federal government. The net income for the calendar years 1918, 1919 and 1920 was $3,530,153, not making any deduction for sinking fund requirements. On January 1, 1919, by acquiring the stock of lines leased to it, and giving in exchange its own first preferred stock, the Boston and Maine Railroad reduced its rentals about $2,600,000 per annum, but increased its preferred stock about $38,817,900. At the same time the bonded indebtedness was increased by $19,879,000. In 1921 the deficit in the operation of the railroad, computed in the same way, was $6,612,421; in 1922 there was net income of $27,991; in 1923 a deficit of $3,491,070 and in 1924 net income of somewhat more than a million dollars. Large borrowings from the Federal government have been the only means by which the railroad has been kept in operation. The obligations of the railroad cannot be sold in the open market on terms which would permit the railroad to finance itself. More than $5,000,000 in bonds mature in 1925, and there are no adequate funds with which to meet them, and no means of issuing new bonds in the market to

raise money with which to meet them. In 1926 more than $11,000,000 in bonds mature, and the prospects are the same as to them. Unless the Federal government comes to the rescue, or the bondholders forego their rights, a foreclosure is probable. A part of the difficulty in making a profit is due to the greatly increased cost of labor, coal and other things used by the railroad, and a part is due to increased motor competition. Increased freight and passenger rates have not counterbalanced the increase in expense. . . . During Federal control, by General Order No. 12 issued March 21, 1918, the Federal Director General of Railroads ordered the discontinuance of all additions or betterments, in order to avoid the raising of capital and the diversion from war needs of the available supply of labor and material. The financial distress of the railroad has been all the time, since 1917, a matter of common knowledge. The town of Greenfield apparently recognized it, for no attempt to enforce the decree was made until 1924. In view of the history of the railroad and the public interests involved, I do not find that the railroad was guilty of laches, and find that its bill of review is not too late."

Proceedings under a petition for the abolition of a grade crossing are in equity. St. 1906, c. 463, Part I, §§ 29, 40; now G. L. c. 159, §§ 65, 79. *Selectmen of Norwood, petitioners*, 183 Mass. 147, 151.

A decree such as that of May, 1917, confirming the report of the commission, was final in its nature. It settled the rights of the parties as to the main issues and left nothing further to be decided by the court in those particulars. A decree of that nature is described in St. 1906, c. 463, Part I, § 43, now G. L. c. 159, § 81, and in *Mayor & Aldermen of Waltham, petitioners*, 206 Mass. 208, 209, 210, as a "final decree." It possesses the incidents of a final decree as commonly described. *Forbes* v. *Tuckerman*, 115 Mass. 115, 119. *Smith* v. *Smith*, 222 Mass. 102, 103. *Shannon* v. *Shepard Manuf. Co.* 230 Mass. 224, 229. *Johnson's Case*, 242 Mass. 489, 494. Although the proceeding was not ended, the appointment of an auditor and other subsequent judicial action relate to the execution and not to any modification

of the decree. See G. L. c. 159, § 59, and *Middleborough* v. *New York, New Haven & Hartford Railroad,* 179 Mass. 520.

A bill of review is the appropriate proceeding by which to seek reversal of a final decree in equity. *Evans* v. *Hamlin,* 164 Mass. 239. *Morgan* v. *Steele,* 242 Mass. 217, 218. *New York Central Railroad* v. *Ayer, ante,* 122, and cases there collected. *Cherry* v. *Cherry, ante,* 172.

A bill of review commonly is granted only (1) for error of law apparent on the record, (2) new evidence not susceptible of use at the trial and coming to light after the decree, and (3) new matter arising after the entry of the decree. *Clapp* v. *Thaxter,* 7 Gray, 384, 386. *Mackay* v. *Brock,* 245 Mass. 131, 133, 134. *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 288.

The ground of relief alleged in the case at bar rests wholly upon matters which have arisen since the entry of the final decree in May, 1917. So far as concerns descriptive averments, it falls within the third classification just mentioned. *Ballard* v. *Searls,* 130 U. S. 50, 55. Dan. Ch. Pl. & Pract. (6th Am. ed.) 1561, 1562, 1563. Story's Eq. Pl. § 404. That class does not include many cases and it is illustrated in our own decisions by *Sawyer* v. *Davis,* 136 Mass. 239, alone, where the principle is somewhat elaborated.

The rule that the petitioner for a bill of review must first obey and perform the decree is one of convenience and not of jurisdiction. It does not prevent courts from inquiry as to errors. *Davis* v. *Speiden,* 104 U. S. 83, 86. See *Cherry* v. *Cherry, supra.* Delay in undertaking and prosecuting the work required by the decree appears to a considerable extent to have been unavoidable and excusable.

The delay in bringing petition for leave to file the bill of review does not deprive the court of jurisdiction to consider the matters alleged. No time within which a bill of review must be brought is fixed by statute. It is governed in this Commonwealth by general principles of equity practice. No limitation is rigidly prescribed. It was said in *Conant* v. *Perkins,* 107 Mass. 79, 82, with reference to a somewhat related subject, "The general rule is, that any bill in equity to correct a mistake in a judgment or award must, by analogy

to the statutes regulating appeals and reviews, be filed within a year after the decision complained of, or, at the latest, within a year after discovering the mistake." *Plymouth* v. *Russell Mills*, 7 Allen, 438, 445. *Evans* v. *Bacon*, 99 Mass. 213. In the nature of things there can be no fixed time within which to seek review on grounds arising subsequent to the entry of the final decree. There has been no such delay in seeking relief after the occurrence of the relevant events in the case at bar as amounts to laches. The circumstances that the petitioner was in the hands of a receiver and under Federal control, and that since these limitations have been removed it has been in greater or less financial distress in a sense cumulative in nature, that the street railway company, upon which according to the final decree rests ten per cent of the financial burden, went into the hands of a receiver in September, 1921, and mortgages on all its property were foreclosed and its property ordered sold in May, 1924, together with other facts disclosed on the record, show that there has been seasonable action by the petitioner in seeking relief. *Porter* v. *Spring*, 250 Mass. 83, 87. *Stewart* v. *Finkelstone*, 206 Mass. 28, 35, 36.

Certain factors give the case at bar an unusual background. The parties to the proceedings are the Commonwealth, the town, which is but an instrumentality of government, and public service corporations whose property has been devoted to a public use and is affected with a public interest. They all stand in this particular upon a footing different from private litigants. The foundation of the decree sought to be reviewed is the requirement of public safety and convenience. All the expenditures required to carry into execution the decree must fall more or less immediately upon the public. The shares to be paid by the Commonwealth and town are a direct burden upon the taxpayers, while that of the other parties must be paid ultimately by the public in increased rates for transportation. The proceeding in which that decree was entered was not terminated but is still pending for appropriate further judicial action.

The facts which have arisen since the final decree make it just and equitable to grant the bill of review. The changes

in the financial resources, amount of business and prospects of future traffic, in the nature and methods of competition among carriers, and the other commercial alterations affecting transportation by railroad, create a situation quite unlike that existing in 1917.   The substantial increase of costs in doing the required construction work is of the same general nature.   These elements all are entitled to weight in proceedings for the abolition of grade crossings.   *Mayor & Aldermen of Lowell* v. *Boston & Maine Railroad,* 238 Mass. 328.   The street railway company has vanished for all practical purposes.   Its utter incapacity to pay any part of the ten per cent of the total cost assessed on it by the decree is important.   It well may be accorded greater significance than the simple reapportionment permitted by the statute upon the other parties.   We do not attach much importance to improvement in automatic signal devices designed to warn travellers at grade crossings of the approach of trains; the review being granted on other grounds, they may be considered for what they may be thought worth in further proceedings.   Without attempting to apportion the weight to be attributed to each of these facts coming into existence since the decree, their collective force requires the review.

The practice with respect to the effect on the original decree of a bill of review by reason of subsequent facts has not been much discussed in our decisions.   Like equitable proceedings in general, it ought to be reasonably flexible. *Elliott* v. *Balcom,* 11 Gray, 286, 292, 296.   Even in writs of review, which are proceedings at law, the powers of the court are broad and the form of judgment may be adapted to the requirements of justice and the legal rights of the parties. *Carrique* v. *Bristol Print Works,* 8 Met. 444, 446.   *Lynn Gas & Electric Co.* v. *Creditors National Clearing House,* 235 Mass. 114, 118.   Cases may arise where complete relief may be afforded on the bill of review.   It is manifest that the court cannot decide the questions to arise on a petition for the abolition of a grade crossing.   Without attempting to lay down a rule applicable to all cases, the appropriate course to pursue in the case at bar is to order a reversal of the decree of May, 1917, and to direct that that case be further heard on

the original petition on principles not inconsistent with this decision. *Buffington* v. *Harvey*, 95 U. S. 99, 103. *Bank of United States* v. *Ritchie*, 8 Pet. 128, 146, 147. *Basye* v. *Beard*, 12 B. Mon. 581, 587, 588. *Allgood* v. *Bank of Piedmont*, 130 Ala. 237, 243. *Adamski* v. *Wieczorek*, 170 Ill. 373. Story's Eq. Pl. § 420. At such hearings all questions of present equity between the parties, whether arising on the original petition or from expenditures by the town in laying out new ways on the expectation of the abolition of the grade crossing, will be open for consideration and adjustment.

It follows from what has been said that the demurrer of the town ought to be overruled and that no reversible error is shown as to the admission of evidence. The order for an interlocutory decree overruling the demurrer and that for a final decree are affirmed.

*Ordered accordingly.*