IDA M. BLANKENBURG *vs.* COMMONWEALTH.

Suffolk.    December 8, 9, 1926. — June 30, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, & SANDERSON, JJ.

*Writ of Error,* To review judgment in proceedings for contempt in a probate court.    *Probate Court,* Jurisdiction: contempt proceedings.    *Contempt of Court.    Certiorari.*

A probate court has jurisdiction and power summarily to investigate and to punish as for a public wrong those committing acts tending to obstruct or to degrade the administration of justice.

*It seems* that proceedings of attachment for contempt used by probate courts to enforce orders and decrees within strictly probate jurisdiction are not according to the common law, are not of a criminal nature, and come within the general principle that they cannot be reviewed by writ of error.

A writ of error will lie to correct errors in a proceeding and commitment for contempt of court instituted not by a party to litigation but by a judge of probate himself by ordering the arrest of a witness upon finding her guilty of contempt of court by wilful and intentional perjury and subornation of perjury committed by her in the presence of the court during the trial of a petition for the allowance of a will, such being a proceeding at common law and coming within the provisions of G. L. c. 250, § 9.

A matter of fact once tried and established by a tribunal having jurisdiction cannot be retried by writ of error; the errors of fact in a judgment which may be reviewed upon writ of error under G. L. c. 250, §§ 3, 9, relate to matters of fact not heard and decided at the trial under review.

Evidence heard at a trial on the merits is no part of the record of a judgment and hence cannot be considered on a writ of error.

The provisions of G. L. c. 268, § 4, do not prevent a judge of probate from dealing with perjury, when committed in such circumstances as to constitute contempt.

The petitioner in a petition for a writ of error to review her conviction and commitment by order of a judge of probate upon his finding her guilty of contempt of court by wilful and intentional perjury and subornation of perjury committed by her in the presence of the court during the hearing of a petition for the allowance of a will, cannot maintain a petition for a writ of certiorari directing the judge of probate to certify to this court documentary, photographic and other evidence at the hearing incidental to the petition for allowance of the will, although the evidence was taken by a stenographer appointed under G. L. c. 215, § 18: the provisions of §§ 9, 12, of that chapter, have no application in such circumstances.

The question, whether an inquiry by the judge into the alleged contempt above described ought to have been continued to enable the plaintiff in error to secure further evidence, rested in the sound discretion of the probate judge.

Specifications, filed by the Attorney General on behalf of the Commonwealth, on the return of an order by a judge of probate to a witness at

a hearing before him to show cause why the witness should not be adjudged in contempt for perjury committed at the hearing, are a part of the record of such an adjudication later made and should be returned upon a writ of error issued upon a petition by the witness.

Upon a report by a single justice of the Supreme Judicial Court of specified questions of law raised before him upon a petition for a writ of error and a "motion" for a writ of certiorari in the same case, it appearing that there had been no hearing under Rule 30 of the Supreme Judicial Court (1926) for the regulation of practice at common law upon issues raised by a demurrer and an answer on file, this court confined itself to the determination of the questions stated in the report of the single justice.

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on August 19, 1925, and afterwards amended. The petition as amended is described in the opinion.

On April 12, 1926, the petitioner also filed in the same case "suggestions of diminution of the record and motion for writ of certiorari . . . ordering the said Probate Court for the county of Suffolk to certify its full record to the proceedings relating to the motion the strike our [*sic*] the appearance of Ida M. Blankenburg in the petition for probate of the will of Lotta M. Crabtree, and the contempt proceedings against the plaintiff in error which arose out of the hearing upon said motion. That they may be presented to this court to the end that the same, or so much thereof, as may be illegal may be quashed."

Writs of error and scire facias were issued and returns made by the judge of probate. The case then came on to be heard by *Pierce,* J., who ruled that as a matter of law the plaintiff in error was not entitled to the relief prayed for in her suggestions of diminution of the record and motion for a writ of certiorari and that "as matter of law no writ of error would lie to review the proceedings of the Probate Court sought by this writ of error to be reviewed"; and, before any hearing on the issues raised by a demurrer and an answer, denied the motion and ordered the dismissal of the petition and reported the case to the full court for determination "of the questions of law arising by reason of the said opinion and orders."

*J. J. Cummings,* for the plaintiff in error.

*M. F. Weston,* Assistant Attorney General, for the Commonwealth.

RUGG, C.J.    This is a petition for a writ of error whereby is drawn in question a sentence of imprisonment imposed upon the petitioner by a judge of probate upon a finding that

she was guilty of contempt of court by wilful and intentional perjury and subornation of perjury committed by her in the presence of the court during the trial of a petition for the allowance of a will. At the threshold lies the question whether writ of error is available to review a proceeding for contempt of this nature established by an adjudication of the Probate Court. A writ of error lies only to review proceedings had according to the course of the common law. That is settled by decisions covering many years. *Martin* v. *Commonwealth*, 1 Mass. 347, 388, 389, 394, 397, 398. *Commonwealth* v. *Marsino*, 252 Mass. 224, 228. *New York Central Railroad* v. *Ayer*, 253 Mass. 122, 127, 128, and cases collected. By G. L. c. 250, § 3, a writ of error is authorized "in a civil action." These words have been held not to include suits in equity because these are not proceedings according to the common law. Bill of review is the appropriate process whereby, after final decree has been entered, to correct errors of law which have occurred in a suit in equity. *Boston & Maine Railroad* v. *Greenfield*, 253 Mass. 391. Proceedings in probate courts usually are not according to the course of the common law. In *Smith* v. *Rice*, 11 Mass. 507, at page 513, a proceeding in a probate court for the division of land, it was said that, although there was error of law in the decree such as would be revised by writ of error if the proceedings were according to the common law, "no writ of error lies to the Probate Court. Their proceedings not being according to the course of the common law, a party situated like the present demandant has no means of revising the decree." The history of the establishment and growth of probate courts during the colonial and provincial periods of this Commonwealth, and a statement of the subjects committed to their jurisdiction, and the reasons therefor, are elaborated in the exhaustive opinion of Chief Justice Shaw in *Peters* v. *Peters*, 8 Cush. 529, where it was held that certiorari does not lie to those courts. It there is demonstrated that in general the procedure of those courts is not according to the common law. See also *Waters* v. *Stickney*, 12 Allen, 1. In *Fitzgerald* v. *Commonwealth*, 5 Allen, 509, 510, 511, are found these words: "The . . . question is, whether a writ of error will lie to the

judge of probate.    It is well settled that it will not, as to any decree or judgment rendered by him in the exercise of his ordinary jurisdiction, for the reason that proceedings before him are not usually according to the course of the common law.    But this reason is not applicable to the present case." That conclusion was reached because special criminal jurisdiction had been conferred by statute upon probate courts, and the proceeding sought to be reviewed was brought under that statute and it was held that a writ of error would lie.    Another decision to the same effect is *Kenney's Case,* 108 Mass. 492, 496.

Therefore, in order to ascertain whether a writ of error will lie in the case at bar, inquiry must be made to ascertain the precise nature of the proceeding sought to be reviewed. That is a proceeding for contempt.    It was not instituted by a party to the litigation concerning the proof of the will, but by the judge himself, who, in open court ordered the arrest of the petitioner for the commission of the acts later found by him to constitute contempt.    It was not a part of the original petition pending in the Probate Court, but was an independent proceeding.    Its sole purpose was to punish the petitioner for an offence committed directly against the authority and dignity of the court and to vindicate the rights of organized society and the majesty of the law.    *Hurley* v. *Commonwealth,* 188 Mass. 443, 445.    To resort to the recognized although perhaps somewhat imperfect nomenclature of the decisions, confessedly this was a criminal rather than a civil contempt in all its characteristics.    The act charged constituted a crime.    The punishment inflicted was imprisonment in jail.    The practical effect of the proceeding upon the petitioner had the incidents significant of a conviction for crime.    In view of the discussion of the nature of criminal contempt in *Root* v. *MacDonald, ante,* 344, just decided, and the cases there collected, no further statement is necessary to support the conclusion that this belongs to the category of criminal contempts.

It is not open to doubt that the Probate Courts of this Commonwealth have jurisdiction over contempts of this nature.    They are courts of record and of superior and general jurisdiction.    G. L. c. 215, §§ 1, 2.    As such, they

possess the inherent power summarily to investigate and to punish as for a public wrong those committing acts tending to obstruct or to degrade the administration of justice. Such power is essential to the performance of their functions, to the maintenance of their authority, and to their capacity to determine the rights of parties according to law. This power cannot be dispensed with in a court because it is necessary to the execution of all its other powers. It is a part of the law of the land. *Whitcomb's Case,* 120 Mass. 118, 120. *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310, 315, 316. *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, 298. *Commonwealth* v. *McNary,* 246 Mass. 46, 50. See *Ex parte Grossman,* 267 U. S. 87, 114. Like power and authority for punishing for contempts as are possessed by the Supreme Judicial Court or the Superior Court in equity are conferred upon probate courts by the express terms of G. L. c. 215, § 34. Further power to deal with contempts such as the present is conferred by G. L. c. 215, § 57. This is but declaratory of the common law.

The process of attachment for contempt is used by probate courts to enforce orders and decrees within strictly probate jurisdiction. The use of that process in aid of distinctively probate jurisdiction, for example, concerning separate support, alimony, support of children and other aspects of domestic relations, has never been regarded as partaking of criminal features. Contempt proceedings to that end are remedial and coercive, are not according to the common law, are not of a criminal nature, and come within the general principle that they cannot be reviewed by writ of error. Contempt proceedings of that nature differ radically from the case at bar, where the contempt proceeding is not remedial or coercive, but exclusively punitive. It is designed wholly to punish an attempt to prevent the course of justice.

In our opinion it follows from all these considerations that a proceeding for contempt such as is disclosed on this record is a proceeding at common law. It is in exercise of a jurisdiction with which the common law of this Commonwealth clothes all its courts. It is a proceeding which in its essential results upon the contemner is like a criminal proceeding;

although differing in many particulars from ordinary prosecutions for crime in common law courts. Because this is a contempt of a kind punishable as a public wrong by probate courts, because it is a separate proceeding in vindication of the authority of courts and the majesty of the law, because it is governed in procedure by the degree of proof, presumption of innocence and rules of evidence pertaining to the criminal law, it is commonly treated as a criminal contempt and for some purposes as a criminal case. *Root* v. *MacDonald, ante,* 344, and cases there collected and reviewed. *Gompers* v. *United States,* 233 U. S. 604, 610. *Ex parte Grossman,* 267 U. S. 87. *O'Shea* v. *O'Shea,* 15 P. D. 59. *Seaward* v. *Paterson,* [1897] 1 Ch. 545.

"At common law it was undoubted that no court reviewed the proceedings of another court in contempt matters. In *Crosby's Case,* 3 Wils. 188, Mr. Justice Blackstone said: 'The sole adjudication of contempts, and the punishment thereof, in any manner, belongs exclusively, and without interfering, to each respective court.'" *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324, 330. That principle prevails in this Commonwealth. *Hurley* v. *Commonwealth,* 188 Mass. 443, 444, and cases there collected. *State* v. *Bittner,* 102 W. Va. 677, 683, 684. But provision for review in contempt has long been a part of our jurisprudence by virtue of legislative enactment. It is now embodied in G. L. c. 250, in these words: "Section 3. A judgment in a civil action may be re-examined, reversed or affirmed upon a writ of error . . . for any error in law or in fact . . . . Section 9. A judgment in a criminal case may be re-examined and reversed or affirmed upon a writ of error for any error in law or in fact." The case at bar can be so reëxamined, if at all, only under § 9. The scope of that section was considered in *Hurley* v. *Commonwealth, supra.* Upon great deliberation it was held that writ of error thereby was authorized to review a judgment in a case of criminal contempt. Some reliance in that decision was also placed upon the statutory provision now found in G. L. c. 211, § 3, to the effect that the Supreme Judicial Court "shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is

expressly provided; and it may issue writs of error . . . to such courts . . . necessary to the furtherance of justice and to the regular execution of the laws." It happened that in the Hurley case the proceeding for contempt arose in connection with the attempt to bribe jurors in the trial of a case in the Superior Court in the exercise of its common law jurisdiction. The decision turned upon the nature of the contempt proceeding rather than upon the nature of the case in connection with which the contempt was committed. It there was said at page 445, touching the statutes to which we have referred, "Considering together the statutes quoted above, we are of opinion that we do no violence to the general purpose of the Legislature, in holding that a sentence to punishment for a distinctively criminal contempt is a judgment in a criminal case, which may be re-examined upon a writ of error." It is to be noted that this carefully phrased statement is not restricted to any court. The reasoning of the decision in the Hurley case is equally applicable to the case at bar. It would be unfortunate if the right to review by writ of error a judgment in a criminal contempt should depend upon the court entering the judgment rather than upon the nature of the case to be reviewed and the kind of jurisdiction exercised in entering the judgment. As already pointed out, such a criminal contempt is a proceeding conferred by the common law of the Commonwealth upon all its courts as well as by special statute upon probate courts. It tends to the symmetrical development of a system of jurisprudence to put all such contempts in a general category as to procedure. It is impracticable, if not impossible, as matter of sound logic to distinguish the case at bar from the Hurley case. Its reasoning and result are adopted without further discussion as governing the present case.

It follows that this judgment of the Probate Court may be reviewed by writ of error. This conclusion is reached without impairing in any degree the force of the general principles declared in *Smith* v. *Rice*, 11 Mass. 507, *Peters* v. *Peters*, 8 Cush. 529, *Waters* v. *Stickney*, 12 Allen, 1, and other similar decisions.

The plaintiff in error has argued that on this record as matter of law she was not guilty of contempt. That ques-

tion is not reported for our determination by the single justice. The argument requires no further consideration than to say that in our opinion it cannot be ruled as matter of law, on the facts found by the judge and set forth in the recitals of the order adjudging the plaintiff in error to be in contempt, either that there was no contempt or that there was error in the proceedings in the Probate Court. *Ex parte Hudgings,* 249 U. S. 378, 382, 383, and cases there collected. *In re Kaplan Bros.* 130 C. C. A. 267; 213 Fed. Rep. 753; certiorari denied in *Kaplan* v. *Leach,* 234 U. S. 765. *In re Schulman,* 101 C. C. A. 361; 177 Fed. Rep. 191. *Davidson* v. *Wilson,* 286 Fed. Rep. 108. *Haimsohn* v. *United States,* 2 Fed. Rep. (2d) 441. See *Matter of Sleeper,* 251 Mass. 6, 19.

The plaintiff in error cannot by any means secure a rehearing upon the merits of the facts established by the findings of the probate judge. A matter of fact once tried and established by a tribunal having jurisdiction cannot be retried by writ of error. In these writs such error of fact cannot be assigned. As was said by Chief Justice Shaw in *Riley* v. *Waugh,* 8 Cush. 220, at page 222, "Were it otherwise, it would always be competent for a party against whom judgment is rendered, to sue out a writ of error, and assign for error, that the facts on which the judgment proceeded were not true, and thus obtain a new trial." *Savage* v. *Gulliver,* 4 Mass. 171, 178. *Joan* v. *Commonwealth,* 136 Mass. 162. *Raymond* v. *Butterworth,* 139 Mass. 471. In these circumstances, "Review of questions of fact is not open." *Hanzes* v. *Flavio,* 234 Mass. 320, 327. *Cheney* v. *Boston & Maine Railroad,* 246 Mass. 502, 505. As to bill of review, compare *Boston & Maine Railroad* v. *Greenfield,* 253 Mass. 391, at page 397.

The error of fact in a judgment which may be reviewed upon writ of error under G. L. c. 250, §§ 3, 9, and which is mentioned in *Perkins* v. *Bangs,* 206 Mass. 408, 412, and *Commonwealth* v. *Marsino,* 252 Mass. 224, 228, does not refer to errors as to findings of fact made at a trial, but to matters of a different nature, such as minority of the defendant, *Johnson* v. *Waterhouse,* 152 Mass. 585, insanity of the defendant, *Hathaway* v. *Clark,* 7 Pick. 144, and death of the defendant and lack of authority of a purported agent

to accept service, *Hanzes* v. *Flavio, supra,* pages 327, 328, that is to say, to matters of fact not heard and decided at the trial under review.

Evidence heard at the trial on the merits is no part of the record and hence cannot be considered on a writ of error. *Storer* v. *White,* 7 Mass. 447.   *Pierce* v. *Adams,* 8 Mass. 383. See *Warner* v. *Collins,* 135 Mass. 26, and *Bacon* v. *George,* 216 Mass. 519.

The argument that the judge is prevented from dealing with perjury, when committed in such circumstances as to constitute contempt, by G. L. c. 268, § 4, cannot be supported.   That section confers an ancillary and additional power upon courts.   It was not intended to cut down the inherent jurisdiction to deal with contempts.   *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310.

The ruling that the plaintiff was not entitled to a writ of certiorari was right.   The evidence heard at the trial before the judge is no part of the record in the case even though it was taken stenographically by a commissioner.   *Moran* v. *Murphy,* 230 Mass. 5.   *De Propper, petitioner,* 236 Mass. 500, 501.

Certiorari is not designed in any event to secure a report of evidence.   Such report would be an encumbrance and no part of the record.   The proper function of the writ of certiorari, as often has been pointed out, is to bring before a superior court, for examination as to errors of law apparent on its face, the true record of an inferior judicial or *quasi* judicial tribunal.   Findings of fact are not open to revision. *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 163, and cases there collected.   *Filoon* v. *City Council of Brockton,* 252 Mass. 218, 223.   *Byfield* v. *Newton,* 247 Mass. 46, 53.   *Marcus* v. *Street Commissioners,* 252 Mass. 331, 333. *Ward* v. *Aldermen of Newton,* 181 Mass. 432.   *Kingman* v. *County Commissioners,* 6 Cush. 306.   Certiorari does not lie to the Probate Court in such a matter.   *Peters* v. *Peters,* 8 Cush. 529.   The documentary, photographic and other evidence, referred to in the petition for the writ of certiorari, cannot be presented to this court on writ of certiorari.   It has no proper place before us in the consideration of the writ of error.   The only ground upon which jurisdiction by writ

of error can be taken of this contempt proceeding is that it is a criminal contempt and in the nature of a proceeding at common law. That has already been pointed out at length. It follows that the rule of equity practice which governs probate procedure in many aspects of its civil jurisdiction, G. L. c. 215, §§ 9, 12, including a full report of the evidence in appropriate cases, can have no application to the case at bar, and the practice in cases like *Drew* v. *Drew*, 250 Mass. 41, and *Lindsey* v. *Bird*, 193 Mass. 200, is not in point and can have no relevancy to the case at bar. Certiorari cannot be successfully invoked to that end. See *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 441, 444.

The question, whether the inquiry ought to have been continued to enable the plaintiff in error to secure further evidence, rested in the sound discretion of the probate judge. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16. *Commonwealth* v. *Festo*, 251 Mass. 275, 278. No one of the matters set forth in the petition for a writ of certiorari affords ground for the invocation of that extraordinary remedy.

The specifications filed by the Attorney General* were a part of the record and copies of them ought to have been returned upon the writ of error. It was agreed at the argument at the bar that, if this was so held by this court, the copy would be returned without the issue of any process to that end either by diminution of record or otherwise. Therefore, no order is made in this particular.

The two questions reported for our consideration have been determined. We do not go beyond those two questions and the matters and arguments connected therewith, because no hearing under Rule 30 of the Supreme Judicial Court (1926) for the regulation of practice at common law, 252 Mass. 598, has been had upon the issues made by the demurrer and answer.

> *Order dismissing writ of error reversed.*
> *Order denying motion for writ of certiorari affirmed.*

---

*On July 31, 1925, the judge of probate on his own motion ordered Ida May Blankenburg to show cause on August 4 why she should not be adjudged in contempt for perjury in the hearing before him, and requested "the Attorney General (as he is the chief prosecuting officer of the Commonwealth) to appear at said time and place to assist this court in presenting specifications of the charge of perjury, and to apprise the said parties thereof and to assist in presenting the evidence against them."