LOIS A. SMITH & others *vs.* PATRICK F. SHANAHAN, administrator, & others.

Essex.    April 8, 9, 1943. — June 30, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Res Judicata. Trust,* Express trust: what constitutes; Addition to existing trust.

Matters determined by a decree of a Probate Court upon a petition for instructions presented by the trustee under a grandmother's will to whom, under suggestions in her will, her grandson before his death had transferred funds received by him under his grandfather's will, with the intent that they should be added to the trust fund under the grandmother's will and be held by the trustee upon the same terms, were res judicata precluding the maintenance of a later proceeding in equity in which the same parties were included and the same facts were set out,

different contentions made in the later proceeding having been within the scope of the earlier petition.

In the circumstances, when a grandson paid funds received by him under his grandfather's will to a trustee under his grandmother's will in accordance with suggestions contained in her will, the funds so paid were added to and became a part of the trust fund already established under her will; a new and separate trust on the terms of her will was not created.

PETITION IN EQUITY, filed in the Probate Court for the county of Essex on July 31, 1942.

The suit was heard by *Phelan*, J., and was dismissed.

*G. W. Abele*, for the petitioners.

*S. J. Cagan*, (*S. S. Cagan* with him,) for the respondent Naugler, guardian.

*R. H. Wiswall*, (*G. T. O'Hara* with him,) for the respondent John Spicer Smith.

*H. F. Knight*, for the respondent J. Newton Smith, trustee; *A. J. Frawley*, for the respondents Shanahan, administrator, and another; & *H. W. King*, for the respondent J. Newton Smith, individually, submitted briefs.

QUA, J. This is a petition in equity brought in a Probate Court by the widow of Joseph Mortimer Smith wherein she seeks to reclaim for the estate of said Smith from J. Newton Smith, who is trustee under the will of Sarah Fuller Smith, a sum of about $113,000 paid to J. Newton Smith by Joseph Mortimer Smith in his lifetime under circumstances which will hereinafter appear.

Joseph N. Smith, who was the grandfather of Joseph Mortimer Smith and of his twin brother John Spicer Smith, died in 1912, leaving a will in which he provided for the distribution of the principal of a trust fund to his twin grandchildren in equal shares when they should become twenty-one years of age. Sarah Fuller Smith, who had been the wife and had become the widow of Joseph N. Smith, apparently fearing that her twin grandchildren might not conserve the sums which under her husband's will were to be paid to them outright, made her own will, in Article 5 of which she gave the sum of $30,000 to J. Newton Smith in trust to use the income for the benefit of the two grandchildren until they should become thirty-five years of age,

when the trustee was to pay over to each of them forty per cent of his "apparent share" of the principal, and thereafter the trustee was to continue to pay to each during his life the income from the balance of his share. Each grandchild was also given a power to dispose by will of "his apparent share of the principal as it may exist at the date of his death." In default of such testamentary disposition "such share" was to go to the then heirs at law of the testatrix. But it was further provided that each grandchild should take no further benefit and have no power of appointment under this trust unless, upon receiving his share of the principal under the will of Joseph N. Smith, he should forthwith "convey and transfer" it to the person who at the time should be trustee under the will of Sarah Fuller Smith, "to be held upon the same terms and conditions as are set forth in this Article Fifth . . . ." Other dispositions were provided for the share in the $30,000 fund of either grandson who should fail thus to pay over the sum received by him under the will of Joseph N. Smith. The testatrix no doubt expected or hoped that by conditionally offering her grandsons the benefit of the $30,000 trust fund created by her she could persuade them to exchange the outright gifts of the sums coming to them at the age of twenty-one under their grandfather's will for forty per cent of those sums at the age of thirty-five with the benefit of the income before they should reach that age, the income of the balance of said sums thereafter for life, and a power of disposal of the principal by will.

The grandmother, Sarah Fuller Smith, died in 1931. The twin grandchildren became twenty-one years of age in 1932, and each thereupon transferred to J. Newton Smith, who was then trustee under the grandmother's will, the sum received by each under the grandfather's will, amounting in each instance to about $113,000. J. Newton Smith has at all times treated and administered these two sums, together with the original $30,000 fund received by him as trustee under Article 5 of the will of Sarah Fuller Smith, "as a single trust fund without distinction as to the source from which said properties were derived." His first account has

been allowed, showing the sum paid him by Joseph Mortimer Smith as received on account of·principal of that trust. Joseph Mortimer Smith made a will in 1935, married the petitioner in 1939, and died in September, 1941, before reaching the age of thirty-five, and while all the sums hereinbefore referred to were held by J. Newton Smith as trustee. By his will Joseph Mortimer Smith left all his property in equal shares to his twin brother, the respondent John Spicer Smith, and to the respondent Carolyn M. Engler, and specifically included in the gift to each a half of his "apparent share of any principal as it may exist at the date of . . . [his] death, and due . . . [him] under . . . the will of . . . [his] late grandmother, Sarah Fuller Smith and . . . [his] late grandfather Joseph N. Smith." But inasmuch as Joseph Mortimer Smith's will did not appear to have been made in contemplation of marriage, his subsequent marriage revoked it, and the will was admitted to probate only in so far as it could operate upon property subject to his disposal by way of appointment under the will of Sarah Fuller Smith. G. L. (Ter. Ed.) c. 191, § 9. An administrator has therefore been appointed to settle his estate.

The widow and children of Joseph Mortimer Smith now contend upon various grounds that the trust in the sum of about $113,000 ended with his death; that his attempted exercise of his power of appointment is invalid; and that there is a resulting trust to his estate of the sum of about $113,000 which he turned over to J. Newton Smith, trustee. The appointees under the will of Joseph Mortimer Smith contend that the appointment to them is valid. A claim to the $113,000 sum is also made by the heirs of Sarah Fuller Smith. We need not decide these conflicting claims, since we are of opinion that the Probate Court correctly dismissed this petition on the ground that its entire subject matter is res judicata for reasons now to be stated.

In November, 1941, after the death of Joseph Mortimer Smith, the respondent J. Newton Smith, who was then holding and treating as a single trust fund the $30,000 which he had originally received under the will of Sarah Fuller

Smith and the two sums of about $113,000 each which he had subsequently received from Joseph Mortimer Smith and John Spicer Smith, filed in the Probate Court a petition wherein he described himself as trustee under the will of Sarah Fuller Smith. In his petition he set forth the provisions of that will. He also set forth the facts substantially as hereinbefore stated relative to the will of Joseph N. Smith, the payment to J. Newton Smith by the twin grandchildren of the two sums of about $113,000 each, his treating of those two sums and the original $30,000 as constituting a single trust fund in his hands, the will of Joseph Mortimer Smith, and the relationship of the members of the Smith family, and he prayed the court for instructions, among other things, "to what extent (if at all), with respect to what property (if any), and for the benefit of what person or persons (if any)," the will of Joseph Mortimer Smith operated as an exercise of the testamentary power of appointment given to said Joseph Mortimer Smith by the will of Sarah Fuller Smith, and to what person or persons and in what amounts or shares the petitioner (J. Newton Smith) should pay "the property which he holds in the corpus of the trust established" by said will in so far as held thereunder for the benefit of Joseph Mortimer Smith and his successors in interest. All parties to the present proceeding were parties to the petition for instructions, except a child then unborn, who was represented by a guardian ad litem.

In view of the fact that the petition for instructions was brought by J. Newton Smith in his capacity as trustee under the will of Sarah Fuller Smith, of his detailed allegations as to all the sums now involved in the present proceeding, of his allegation that all such sums were held by him "as such trustee" and "as a single trust fund," and of his prayers for instructions as to the distribution of the whole fund, we cannot doubt that all the property as well as all the parties involved in this proceeding were brought into the petition for instructions, and that the decree entered by the Probate Court on that petition on April 7, 1942, after hearing, dealt with the distribution of the entire consolidated fund and was conclusive as to all questions raised in the present pro-

ceeding. *Foye* v. *Patch*, 132 Mass. 105, 110, 111. *Hanzes* v. *Flavio*, 234 Mass. 320, 329. *Cleaveland* v. *Malden Savings Bank*, 291 Mass. 295, 298. It is immaterial that the same contentions were not then advanced that are now advanced, and that the same arguments were not then made that are now made. All the contentions now advanced and all the arguments now made were within the scope of the former petition and were then open to all parties.

Much stress is now laid by the present petitioner upon the argument that when Joseph Mortimer Smith paid over about $113,000 to J. Newton Smith, the trustee under the will of Sarah Fuller Smith, Joseph Mortimer Smith did not merely add that sum to the trust fund of $30,000 already created by the terms of that will. It is argued that he intended to create a new and distinct trust of the sum of $113,000, to be held by the same trustee who held the $30,000, for the benefit of the same persons and upon terms similar to those set forth in the will of Sarah Fuller Smith so far as applicable — in other words, what is sometimes called a "referential" trust. Then it is argued that the petition for instructions related only to the sum held in trust under that will, that is, the original $30,000. We need not concede that if there were two trusts the petition for instructions did not involve both of them. But we are satisfied that there was only one trust — that originally created under the will of Sarah Fuller Smith, and that the sum of about $113,000 paid in by Joseph Mortimer Smith was simply added to the original trust fund.

Whether a person paying money to a trustee intends to create a new trust or to add to an existing trust depends upon the intention manifested by him. *Bemis* v. *Fletcher*, 251 Mass. 178, 187, 188. *Old Colony Trust Co.* v. *Cleveland*, 291 Mass. 380. We think it plain that when Joseph Mortimer Smith paid to J. Newton Smith, trustee under the will of Sarah Fuller Smith, the sum of about $113,000 which Joseph Mortimer Smith received under his grandfather's will he intended to accept the offer held out by the will of his grandmother and to do what she intended he should do. We think that her will discloses the intent that her grand-

children should simply pay over the sums they might receive under their grandfather's will to her trustee, selected by her, to be held as a part of the trust originally created by her, and to be controlled in all respects by the terms she laid down. Provisions in her will for a possible unequal division of income between the two grandchildren in the discretion of her trustee are scarcely consistent with more than one trust. Her purpose could readily be accomplished by a single trust but could only be obscured and made more difficult of accomplishment by more than one trust. Moreover, if she contemplated two trusts she must also have contemplated three, since there were two grandchildren cach of whom would receive money from the estate of his grandfather and might elect to pay it over. The futility of having two or three parallel trusts in the hands of the same trustee to accomplish the same objects in the same way is plainly apparent. The receipt given to Joseph Mortimer Smith by J. Newton Smith when the former turned over to the latter the sum of about $113,000 was expressly given in his capacity as trustee under the will of Sarah Fuller Smith and in reference to that sum contained the words, "to be held by me as such trustee in accordance with the terms of said Article 5 of said will and the other provisions of said will applicable in the premises." It is true that if the matter is approached with the preconception that there were two trusts and that the petition for instructions related only to one of them, language can be found both in the will of Sarah Fuller Smith and in the petition for instructions that is consistent with that view, although falling far short of compelling its adoption. But the arguments the other way seem to us overwhelming.

*Decree affirmed.*